COMMONWEALTH *VS.* ROBERT CONNORS.

Middlesex. May 1, 2006. - July 19, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Sex Offender. Constitutional Law,* Sex offender, Self-incrimination. *Evidence,*
Sex offender. *Practice, Criminal,* Psychiatric examination. *Practice, Civil,*
Sex offender. *Privileged Communication.*

In a proceeding seeking the commitment of the defendant as a sexually danger-
ous person pursuant to G. L. c. 123A, the judge did not err in denying the
defendant's pretrial motion to present psychiatric evidence based on
personal interviews with the defendant's own psychiatric expert, where to
permit such evidence would offend basic notions of fairness in such a
proceeding, given the defendant's refusal to submit to interviews with
court-appointed experts [316-320]; further, the defendant suffered no
prejudice from the admission in evidence of a mittimus that contained a
brief reference to a sexual assault for which the defendant had never been
charged, given the other strong evidence that the defendant was sexually
dangerous [320-321].

PETITION for civil commitment filed in the Superior Court
Department on December 10, 1999.

A pretrial motion to present certain psychiatric evidence was
heard by *Nonnie S. Burnes*, J., and the case was tried before
her.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Edward B. Fogarty* for the defendant.

*Sheryl F. Grant*, Assistant District Attorney, for the
Commonwealth.

IRELAND, J. In 2002, a Superior Court jury found the defendant
to be a sexually dangerous person pursuant to G. L. c. 123A,
§ 1.[1] The defendant appealed from this adjudication, claim-
ing that although he refused to be interviewed by the two court-
appointed qualified examiners mandated in G. L. c. 123A,

[1]General Laws c. 123A, § 1, defines a "sexually dangerous person" to be:

§ 13 (a),[2] the trial judge erred in denying his pretrial motion to present psychiatric evidence based on personal interviews with his own psychiatric expert. The defendant further claims that the judge erred in admitting in evidence a mittimus that he argues included alleged hearsay evidence of a sexual assault for which he had never been charged. We transferred the case to this court on our motion. Because we conclude that the judge did not err in denying the defendant's pretrial motion, and that the defendant suffered no prejudice as a result of the mittimus being admitted in evidence, we affirm the defendant's adjudication as a sexually dangerous person.

*Background.* In 1991, the defendant pleaded guilty to several indictments charging him with rape and abuse of a child (two indictments), indecent assault and battery on a child under

"[A]ny person who has been (i) convicted of or adjudicated as a delinquent juvenile or youthful offender by reason of a sexual offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility; (ii) charged with a sexual offense and was determined to be incompetent to stand trial and who suffers from a mental abnormality or personality disorder which makes such person likely to engage in sexual offenses if not confined to a secure facility; or (iii) previously adjudicated as such by a court of the commonwealth and whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive sexual misconduct by either violence against any victim, or aggression against any victim under the age of 16 years, and who, as a result, is likely to attack or otherwise inflict injury on such victims because of his uncontrolled or uncontrollable desires."

[2]General Laws c. 123A, § 13 (a), provides:

"If the court is satisfied that probable cause exists to believe that the person named in the petition is a sexually dangerous person, the prisoner or youth shall be committed to the treatment center for a period not exceeding 60 days for the purpose of examination and diagnosis under the supervision of two qualified examiners who shall, no later than 15 days prior to the expiration of said period, file with the court a written report of the examination and diagnosis and their recommendation of the disposition of the person named in the petition."

The qualified examiners mentioned in G. L. c. 123A, § 13 (a), are independent experts appointed by the court. See G. L. c. 123A, §§ 1, 13 (a), 14 (a).

fourteen years (five indictments), and assault and battery (two indictments).[3] In 1999, the Commonwealth filed a civil petition to commit the defendant as a sexually dangerous person pursuant to G. L. c. 123A, § 12 (*b*).[4] The Superior Court found probable cause to believe that the defendant was a sexually dangerous person as provided in the statute. Pending trial, the defendant was temporarily committed to a treatment center for examination and diagnosis under the supervision of two qualified examiners, as provided by G. L. c. 123A, § 13 (*a*). See note 2, *supra.*

As was his right (discussed *infra*), the defendant declined to be interviewed by two qualified examiners who attempted to meet with him for the purposes of examination and diagnosis pursuant to G. L. c. 123A, § 13 (*a*). Both doctors therefore based their opinions on a review of the defendant's records. G. L. c. 123A, § 13 (*b*). The doctors filed their reports in Superior Court on behalf of the Commonwealth, and each opined that the defendant was a sexually dangerous person.

Prior to trial, the defendant retained his own psychiatric expert

---

[3]The defendant was sentenced to from eight to ten years on the rape charges (to be served concurrently). On the charges of indecent assault and battery on a child under fourteen, the defendant received a sentence of from six to ten years to be served from and after his sentences on the rape charges. The assault and battery convictions were placed on file, subsequent to the judge's entering a guilty finding. The terms of probation include a requirement to participate in any and all sex offender treatment programs as ordered by the probation department; no contact — either directly or indirectly — with the victims or their families; no unsupervised contact with any children; and a witness assessment fee of $50. While incarcerated, the defendant was ordered to participate in sex offender treatment by the probation department, but he consistently refused. As a result, the defendant was repeatedly denied parole.

[4]General Laws c. 123A, § 12 (*b*), provides:

"When the district attorney or the attorney general determines that the prisoner or youth in the custody of the department of youth services is likely to be a sexually dangerous person as defined in section 1, the district attorney or the attorney general at the request of the district attorney may file a petition alleging that the prisoner or youth is a sexually dangerous person and stating sufficient facts to support such allegation in the superior court where the prisoner or youth is committed or in the superior court of the county where the sexual offense occurred."

pursuant to G. L. c. 123A, §§ 13 (*d*), 14 (*b*).[5] The defendant then filed a motion in limine seeking a ruling that he could refuse to speak to the qualified examiners without suffering any "adverse consequences," and that he was in the process of being examined by his own independent examiner. The judge denied the defendant's motion, ordering that the defendant submit to personal interviews with the two court-appointed qualified examiners, or any expert psychiatric evidence he offered at trial based on personal interviews with his own expert would be excluded.[6]

The defendant did not submit to interviews with the two court-appointed qualified examiners, therefore his expert psychiatric evidence based on personal interviews was excluded from trial. In January of 2002, a jury found that the Commonwealth proved beyond a reasonable doubt that the defendant is a sexually danger-ous person.

*Discussion.* 1. *General Laws c. 123A.* General Laws c. 123A, § 13 (*a*), provides, in relevant part: "[T]he prisoner or youth shall be committed to the treatment center for a period not exceed-ing 60 days for the purpose of examination and diagnosis under the supervision of two qualified examiners." The plain language of the statute dictates that the defendant be subject to examina-

---

[5]General Laws c. 123A, § 13 (*d*), provides, in relevant part:

"Any person subject to an examination pursuant to the provisions of this section may retain a psychologist or psychiatrist who meets the requirements of a qualified examiner, as defined in section 1, to perform an examination on his behalf."

General Laws c. 123A, § 14 (*b*), provides, in relevant part:

"[T]he person named in the petition may retain experts or profes-sional persons to perform an examination on his behalf. Such experts or professional persons shall be permitted to have reasonable access to such person for the purpose of the examination as well as to all relevant medical and psychological records and reports of the person named in the petition."

[6]By the judge's ruling, the defendant still could have introduced his own expert testimony if that testimony was not based on personal interviews with him.

tion by two qualified examiners.[7] See *Foss* v. *Commonwealth*, 437 Mass. 584, 586 (2002); *Hashimi* v. *Kalil*, 388 Mass. 607, 609-610 (1983). Moreover, this court stated in *Commonwealth* v. *Poissant*, 443 Mass. 558, 565 (2005), that § 13 (*a*) "mandates that the defendant be examined by two qualified examiners." In *Commonwealth* v. *Bradway*, 62 Mass. App. Ct. 280, 288 (2004), the Appeals Court stated that "the statute requires that there be a clinical component to the qualified examiners' review, as it provides the sex offender 'shall be committed to the treatment center for . . . the purpose of examination and diagnosis under the supervision of two qualified examiners."

The statute does not explicitly state whether the allegedly sexually dangerous person may offer his or her own expert testimony, while refusing to allow the court-appointed qualified examiners to conduct their own examinations. However, we conclude that to permit the defendant to offer his own expert testimony, based on personal interviews, while refusing to submit to interviews with court-appointed experts, would offend basic notions of fairness in such proceedings.

---

[7]The defendant argues that the statute contains no language concerning the necessity of an *interview*, and that it only mandates an *examination*. As support, the defendant cites *Commonwealth* v. *Poissant*, 443 Mass. 558, 559 n.1 (2005):

> "To the extent the parties use the words 'interview' and 'examination' interchangeably in their briefs, we note that G. L. c. 123A, §§ 13 and 14, refer only to examinations, not interviews. For the purposes of this opinion, there is no meaningful distinction between the terms."

We do not find the defendant's argument to be relevant to our discussion. First, we stated in the *Poissant* case that there is, in fact, "no meaningful distinction between the terms." *Id.* Second, our primary concern in this case is the imbalance between the defendant's evidence, which contains expert testimony based on personal interviews, and the Commonwealth's evidence, which contains expert testimony based only on the defendant's records. The purpose of G. L. c. 123A, § 13 (*a*), is to remedy any imbalance that could occur in sexually dangerous person proceedings. See note 9, *infra*. The *Poissant* language that the defendant cites also states that G. L. c. 123A, § 13 (*a*), corrects for the type of imbalance where "a defendant could use expert evidence to assert a defense based on his mental state, and at the same time assert the privilege against self-incrimination to avoid being interviewed by a Commonwealth expert. The Commonwealth would be at an unfair disadvantage, unable to rebut effectively the defendant's expert testimony." *Commonwealth* v. *Poissant, supra* at 565.

This court has addressed this issue in criminal proceedings, where defendants intended to offer expert testimony in support of a defense of lack of criminal responsibility, a claim that mental impairment affected the ability to form the requisite intent, or that a mental disability precluded a knowing and voluntary waiver of rights subject to *Miranda* v. *Arizona,* 384 U.S. 436 (1966), and subsequent confession. See *Commonwealth* v. *Ostrander,* 441 Mass. 344, 351-355, cert. denied, 543 U.S. 867 (2004); *Commonwealth* v. *Contos,* 435 Mass. 19, 23-26 (2001); *Commonwealth* v. *Diaz,* 431 Mass. 822, 828-830 (2000); *Blaisdell* v. *Commonwealth,* 372 Mass. 753, 766-769 (1977). See also *Commonwealth v. Wayne W.,* 414 Mass. 218, 234 (1993) (holding that juveniles who intend to offer expert psychiatric evidence based on personal interviews in juvenile transfer proceedings may be ordered to participate in interviews with the Commonwealth's expert). Uniformly in such cases, this court has held that a defendant may not offer expert psychiatric testimony based on personal interviews unless he or she also submits to interviews with the Commonwealth's expert.

Similarly, the defendant here cannot refuse to submit to interviews with the court-appointed experts, while attempting to introduce his own expert testimony based on personal interviews. The same reasoning applies: had the defendant's motion been allowed, the Commonwealth would have been put at a sharp disadvantage in the course of the proceedings, as it would have been unable effectively to rebut the defendant's expert testimony.[8] Granting the defendant's motion would have allowed a "distorting effect on the fact finder's role" and created an "unreasonable and debilitating effect" on "society's conduct of a fair inquiry." *Commonwealth* v. *Wayne W., supra*

---

[8]We find no merit to the defendant's argument that because the Commonwealth has "for years" responded to G. L. c. 123A, § 9, petitions without personal interviews with petitioners, that the Commonwealth is put at no disadvantage here without any interviews with the defendant. The defendant misses the point; a disadvantage to one party does in fact occur when there is an imbalance of evidence. See *Commonwealth* v. *Ostrander,* 441 Mass. 344, 351-355, cert. denied, 543 U.S. 867 (2004); *Commonwealth* v. *Contos,* 435 Mass. 19, 23-26 (2001); *Commonwealth* v. *Diaz,* 431 Mass. 822, 828-830 (2000); *Blaisdell* v. *Commonwealth,* 372 Mass. 753, 766-769 (1977). Had the defendant's expert testimony not been based on personal interviews, the Commonwealth and the defendant would have been on equal footing.

at 231, quoting *United States* v. *Byers*, 740 F.2d 1104, 1113 (D.C. Cir. 1984). The Superior Court's denial of the defendant's motion precluded such a possible inequity.[9]

We agree with the defendant that he had the right, pursuant to G. L. c. 233, § 20B, to refuse to speak to the qualified examiners who attempted to interview him. This court has stated that the patient-psychotherapist privilege afforded by G. L. c. 233, § 20B, subject to exception in G. L. c. 123A, § 13 (*b*), applies in sexually dangerous persons proceedings. See *Commonwealth* v. *Callahan*, 440 Mass. 436, 440-442 (2003); *Commonwealth* v. *Lamb*, 365 Mass. 265, 268-270 (1974). However, the defendant cannot selectively invoke this privilege as to the court-appointed experts, and not as to his own expert. Where a defendant voluntarily seeks to present expert psychiatric evidence, which includes his own statements, the defendant is not denied his privileges against self-incrimination if he is required to submit to an examination by the Commonwealth's psychiatrist as a condition of the admission of his evidence.[10] *Commonwealth* v. *Wayne W.*, *supra* at 232. Here, the defendant voluntarily sought

[9]The *Poissant* decision supports the propriety of the judge's order. There, the defendant submitted to an examination by a court-appointed qualified examiner, who concluded that the defendant did not suffer a personality disorder likely to cause him to engage in sexual offenses. *Commonwealth* v. *Poissant*, *supra* at 560. A second qualified examiner, with whom the defendant refused to speak, also opined that the defendant was not a sexually dangerous person. As allowed by G. L. c. 123A, § 14 (*b*), the defendant retained his own expert, who was to testify at trial. *Id.* at 561. The Commonwealth requested that the judge order the defendant to submit to an interview with an expert it would select or, in the alternative, that all evidence and testimony of the defendant's expert be excluded. *Id.* The Commonwealth argued that its own expert must be able to examine the defendant in order to avoid an imbalance of evidence. *Id.* at 565-566. This court affirmed the denial of the Commonwealth's motion, noting that "[n]o such imbalance exists in a sexually dangerous person proceeding, as [G. L. c. 123A, § 13 (*a*),] has already corrected for it. Section 13 (*a*) mandates that the defendant be examined by two qualified examiners." *Id.* at 565. Therefore, to maintain the balance of evidence discussed in the *Poissant* case, the defendant here cannot be allowed to submit to interviews with his own expert, while denying interviews with court-appointed examiners. The statute's mandating of examinations by court-appointed experts is included for the very purpose of correcting for any imbalance of evidence that could occur. The defendant's motion, if allowed, would have created the very imbalance of evidence that the *Poissant* holding sought to avoid.

[10]The defendant attempts to distinguish the waiver of the constitutional

to present his own psychiatric evidence based on personal interviews. The judge's order that the defendant submit to interviews with court-appointed experts as a consequence of presenting his own expert testimony or have the interview-based portion of the evidence excluded, did not violate constitutional privileges against self-incrimination or the "patient-psychotherapist privilege."

2. *Mittimus.* The defendant also claims that the judge erred in admitting in evidence a mittimus[11] containing alleged hearsay of an uncharged sexual crime on the part of the defendant. We conclude that the defendant suffered no prejudice from the admission of this evidence. The jury heard strong evidence that the defendant was sexually dangerous. The defendant's adult and juvenile records revealed that he began committing sexual offenses at the age of sixteen years and was found guilty or delinquent of nine sexual offenses — two of rape of a child, two of aggravated rape of a child, and five of indecent assault and battery on a child under fourteen years. From these records, the jury were provided with detailed information concerning these multiple and repeated sexual offenses. The admission of the mittimus, which contained a brief reference to one other

---

right against self-incrimination from the waiver of the "patient-psychotherapist privilege" afforded by G. L. c. 233, § 20B. We find this argument irrelevant. The defendant waived both privileges when he spoke to his own expert and attempted to have his own statements introduced at trial.

[11]The mittimus contained the following entry, under "Circumstances of Offense(s):"

> "[The defendant] was found delinquent of two counts of Aggravated Rape of two Laotian boys (age 9 and 7: brothers). Police reports state that [the defendant] told the two boys to meet him behind a building in Lowell under the pretense of giving them fireworks. [The defendant] then held a knife to the boys and told them to take their clothes off. He then had each boy insert [the defendant's] penis into each boy's mouth, one at a time.

> "The police, after learning of this incident, recalled a similar incident with an eight-year-old female. They questioned [the defendant] who admitted to sexually assaulting said female by digitally penetrating her vagina. Female identified [the defendant] by photo."

The defendant objected and argued that the portion of the mittimus that described the uncharged sexual offense (the second paragraph) should be redacted.

sexual crime, without any accompanying detail, could not have prejudiced the defendant, when such a record was before the jury.

*Conclusion.* Because we conclude that the judge did not err in denying the defendant's pretrial motion, and because we hold that the defendant suffered no prejudice as a result of the admission in evidence of the mittimus, we affirm the defendant's adjudication as a sexually dangerous person.

*So ordered.*