# Hugo Santos, petitioner.

No. 08-P-536.

Barnstable. February 6, 2009. - November 19, 2010.

Present: Rapoza, C.J., Rubin, & Fecteau, JJ.

Further appellate review granted, 460 Mass. 1101 (2011).

*Sex Offender. Evidence,* Sex offender, Expert opinion, Medical record.

At the hearing on an individual's petition for discharge from civil commit-
ment as a sexually dangerous person, the judge erred in excluding from
evidence the written reports of the petitioner's two expert psychologists,
where case law and the text of G. L. c. 123A, § 9, permitted the admission
of the reports as "psychiatric and psychological records"; where this court
could not say with the requisite certainty that the error was not prejudicial,
this court vacated the judgment and remanded the matter for further
proceedings. [283-286]

Petition filed in the Superior Court Department on June 8,
2005.

The case was tried before *Linda E. Giles*, J.

*Michael J. Fellows* for the petitioner.

*Brendan J. Frigault* for the Commonwealth.

Rubin, J. In 2005, Hugo Santos petitioned for discharge from
his civil commitment to the Massachusetts Treatment Center
(treatment center), pursuant to G. L. c. 123A, § 9. In a hearing
to determine whether the then seventy-three year old petitioner
remained a sexually dangerous person requiring continuing
commitment, the judge allowed the respondent Commonwealth
to introduce in evidence the written reports of two "qualified
examiners" (QEs), as defined in G. L. c. 123A, § 1. The QEs,
who also testified as to their conclusions, opined that the
petitioner remained sexually dangerous. Over the petitioner's
objection, the judge also allowed the Commonwealth's motion
to exclude from evidence the written reports of the petitioner's
two expert psychologists. The petitioner's experts, who also
testified, reached the conclusion opposite of that reached by the

QEs, opining that the petitioner was no longer sexually danger-
ous and could be safely released. The primary area of disagree-
ment was the experts' assessment of the petitioner's risk of
recidivism given his advanced age, including disagreement
about a number of subsidiary questions: the proper way to score
the petitioner on a widely-accepted recidivism assessment test
that takes into account static factors, the value of that test in
light of the petitioner's age, statistics concerning recidivism in
people over seventy, and the significance of those statistics. The
petitioner was found to remain sexually dangerous and remains
civilly committed.

1. *The ruling below.* Chapter 123A, § 9, of the General Laws
sets out the procedures for conducting hearings to determine
whether someone committed to the treatment center remains a
sexually dangerous person. The statute provides that

> "[t]he court shall order the petitioner to be examined by
> two qualified examiners, who shall conduct examinations,
> including personal interviews, of the person on whose
> behalf such petition is filed and file with the court written
> reports of their examinations and diagnoses, and their
> recommendations for the disposition of such person. Said
> reports shall be admissible in a hearing pursuant to this
> section."

G. L. c. 123A, § 9, amended by St. 1993, c. 489, § 7.[1] "Quali-
fied examiner" is defined as

> "a physician who is licensed pursuant to section two of
> chapter one hundred and twelve who is either certified in
> psychiatry by the American Board of Psychiatry and Neurol-
> ogy or eligible to be so certified, or a psychologist who is
> licensed pursuant to sections one hundred and eighteen to
> one hundred and twenty-nine, inclusive, of chapter one
> hundred and twelve; provided, however, that the examiner
> has had two years of experience with diagnosis or treat-

---

[1]General Laws, c. 123A, § 9, continues, "If such person refuses, without
good cause, to be personally interviewed by a qualified examiner appointed
pursuant to this section, such person shall be deemed to have waived his right
to a hearing on the petition and the petition shall be dismissed upon motion
filed by the Commonwealth. The qualified examiners shall have access to all
records of the person being examined."

ment of sexually aggressive offenders and is designated by the commissioner of correction. A 'qualified examiner' need not be an employee of the department of correction or of any facility or institution of the department."

G. L. c. 123A, § 1, amended by St. 1993, c. 489, § 1. The QEs in each particular case are selected by the Department of Correction (department), chosen from the pool of those designated by the Commissioner of Correction (commissioner) under the statute. See *Commonwealth* v. *Starkus*, 69 Mass. App. Ct. 326, 334-335 (2007).[2] The statute makes the QEs' reports admissible in their entirety. G. L. c. 123A, § 9 ("Said reports *shall be admissible* in a hearing pursuant to this section" [emphasis added]). This is so even though the reports are themselves hearsay, and even when they contain, as they regularly do, and as they did in this case, additional hearsay statements made by others — e.g., treatment center personnel, police, witnesses, and prior qualified examiners — that would otherwise be inadmissable (so-called "totem pole hearsay"). See *McHoul, petitioner*, 445 Mass. 143, 150-153 (2005) (holding such hearsay admissible when it is contained in a QE's report). The judge here properly admitted the QEs' written reports.

Section 9 also provides that "[e]vidence of the person's juvenile and adult court and probation records, psychiatric and psychological records, [and] the department of correction's updated annual progress report of the petition, including all relevant materials prepared in connection with the [G. L. c. 123A, § 6A,] process . . . shall be admissible in a hearing under this section." The petitioner's experts are both licensed psychologists. Based on their curricula vitae, which were admitted in evidence, and on their testimony, the petitioner asserts that each of his experts meets all the requisites for being a QE except for designation as such by the commissioner. The judge, however, excluded the petitioner's experts' written reports, ruling that "there is no provi-

---

[2]Qualified examiners are currently provided to the Commonwealth by a for-profit corporation, Forensic Health Services, Inc., a vendor that operates under a contract with the department for the provision of such examiners and that also holds contracts with the department to provide a wide range of other services. See, e.g., *Johnstone, petitioner*, 72 Mass. App. Ct. 123, 124 n.3 (2008), *S.C.*, 453 Mass. 544 (2009); Massachusetts Department of Correction, Program Description Booklet at 44 (June 2008).

sion under the law or our rules of evidence for the admission of [the petitioner's] experts' reports."[3]

2. *Analysis.* In this appeal, the petitioner argues that the failure to admit his experts' reports in a case where the QEs' reports were admitted on the Commonwealth's motion violated his rights to due process and equal protection.[4]

---

[3]The text of G. L. c. 123A, § 9, also provides for the admission of "any other evidence that tends to indicate that [the petitioner] is a sexually dangerous person." This language, which is one-sided, permitting the introduction only of evidence favorable to the Commonwealth, was essentially read out of the statute in *Commonwealth* v. *Bladsa,* 362 Mass. 539, 540-542 (1972), where the court concluded that the rules of evidence, rather than this catch-all provision, applied to determine the admissibility of evidence not specifically deemed admissible by statute. The Supreme Judicial Court held that "[i]t would be inappropriate to conclude otherwise, since these proceedings may result in the commitment of the defendant to an institution." *Id.* at 541. Accord *Specht* v. *Patterson,* 386 U.S. 605, 609-610 (1967) (setting forth procedural safeguards mandated by due process in adjudication of sexual dangerousness).

Although *Bladsa* construed G. L. c. 123A, § 5, which was subsequently repealed and replaced by the current G. L. c. 123A, § 14, the language in § 9 is identical to that construed in *Bladsa,* and the decision has been held to be applicable to § 9 proceedings. See *McHoul, petitioner,* 445 Mass. at 147 n.2. Thus, except for those items specifically deemed admissible by statute, the rules of evidence, not this catch-all provision of § 9, apply to proceedings under § 9. See *ibid.* In an analogous provision addressing initial commitment proceedings adopted after *Bladsa,* the Legislature explicitly provided for the admissibility of "other evidence tending to show that such [petitioner] is *or is not* a sexually dangerous person" (emphasis added). G. L. c. 123A, § 14(*c*), inserted by St. 1999, c. 74, § 8.

[4]The petitioner argues that, at least where, as here, both QEs conclude that a petitioner remains sexually dangerous, the admission of the QEs' reports on the Commonwealth's motion while the petitioner's experts' reports are excluded creates an "imbalance of evidence," resulting in an impermissible "disadvantage to one party," *Commonwealth* v. *Connors,* 447 Mass. 313, 318 n.8 (2006), "distorting . . . the fact finder's role" in a way that does not comport with fundamental principles of fairness. *Commonwealth* v. *Ostrander,* 441 Mass. 344, 351-355 (2004), quoting from *Commonwealth* v. *Wayne W.,* 414 Mass. 218, 231 (1993). Documentary evidence is sent to the jury room, and the petitioner argues, the admission of the QEs' reports alone permits jury perusal of those, and only those, reports during deliberation without any opportunity for further cross-examination by the petitioner. The petitioner argues further that it subtly telegraphs to the jury that the opinions of the petitioner's experts simply do not count as much as those of the QEs, since the written reports setting forth those experts' opinions are deemed unworthy of admission. He points out that the judge in this case stated in her instructions:

"Members of the jury, I just want to point out something that pursuant to the statute dealing with this kind of petition, by law the legislature

"A court will ordinarily 'not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of. . . . Thus, if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter.' " *Commonwealth* v. *Bartlett*, 374 Mass. 744, 749 (1978), quoting from *Ashwander* v. *Tennessee Valley Authy.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring). Where a particular construction of a statute is the premise of a constitutional claim, we must resolve any "issues of statutory interpretation . . . prior to reaching any constitutional issue." See *1010 Memorial Drive Tenants Corp.* v. *Fire Chief of Cambridge*, 424 Mass. 661, 663 (1997) (*1010 Memorial Drive*). A proper understanding of the limited scope of the judicial role requires that we not unnecessarily decide constitutional questions lest we inappropriately constrain the political branches of government.

In this case, the petitioner did not make the narrower, non-constitutional argument in his appellate brief that the statute requires the admission of his experts' reports. Although *1010 Memorial Drive* demonstrates that we have the authority despite that to decide whether the statute presents the constitutional question posed by the petitioner, as a matter of prudence after argument we requested briefing from the parties as to whether the statute itself provides for the introduction of the reports.

In *Commonwealth* v. *Starkus*, 69 Mass. App. Ct. at 338-340, we concluded that a report by a non-QE psychiatrist offered in evidence by the Commonwealth is a "psychiatric [or] psychological record[]" within the meaning of G. L. c. 123A, § 14(c), and is therefore admissible in a sexual dangerousness proceeding held under that section just as QE reports are, without redaction

has said that the reports of the Community Access Board and the two qualified examiners are admissible in evidence. The reports of the two independent evaluators that are going to be called by the petitioner are not admissible. So I am following the dictates of the statute."

The petitioner also argues that the exclusion of his experts' reports deprived him of a fundamental liberty interest and that it subjected him to different and unconstitutionally unequal treatment compared to individuals involved in proceedings under G. L. c. 123A, § 14.

of totem pole hearsay, see *id.* at 338-340. At first blush it may seem that the report at issue in *Starkus* would fit more comfortably within the language of § 14(*c*) (for which there is no § 9 counterpart) allowing the admission of psychiatric or psychological "reports." The treatment of the report as a "record" in *Starkus*, however, is consistent with the Supreme Judicial Court's construction of the word "record" in its earlier decision in *McHoul, petitioner*, 445 Mass. at 146-147. There, the court held that "annual treatment reports" and "observation and behavior reports" prepared by the treatment center were admissible in § 9 proceedings as "psychiatric and psychological records" within the meaning of § 9. *Ibid.*[5]

In any event, we are bound by the construction given the statutory language in our prior decision in *Starkus*. See *Commonwealth* v. *Lindsey*, 72 Mass. App. Ct. 485, 495 (2008). The Commonwealth has presented no reason why that construction should be displaced in this case. The provision of § 9 at issue here is essentially identical to the provision of § 14(*c*) construed in *Starkus*, and, under that decision, the psychologists' reports here are admissible as "psychiatric [or] psychological records." As that resolves the case, we need express no opinion on the constitutional question of due process raised by the petitioner, that failure to admit his experts' reports would deprive him of an "equal footing" with the Commonwealth. *Commonwealth* v. *Connors*, 447 Mass. 313, 318 n.8 (2006).

Because we conclude that § 9 requires the admission of the petitioner's experts' reports on the same basis as those of the QEs, the judge's conclusion that there was no basis for their admission was in error. We cannot say with the requisite certainty that the error was nonprejudicial. See *Commonwealth* v.

---

[5]Although the court in *McHoul* did not explicitly state what category of admissible document these reports were, of the categories it catalogued as admissible, they can only be "psychiatric and psychological records." See *McHoul, petitioner*, 445 Mass. at 146-147. The court also listed as admissible "the report of a qualified examiner, the petitioner's 'juvenile and adult court and probation records,' . . . the Department of Correction's annual progress report pertaining to the petitioner[,] . . . the report of the community access board evaluating the petitioner for participation in the community access program, and that board's annual report concerning the petitioner's current sexual dangerousness." *Ibid.* The reports at issue in *McHoul* fall into none of these categories.

*Flebotte*, 417 Mass. 348, 353 (1994), quoting from *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983) ("An error is nonprejudicial only '[i]f . . . the conviction is sure that the error did not influence the jury, or had but very slight effect' "). See also *Commonwealth* v. *Linton*, 456 Mass. 534, 560 n.19 (2010) (prejudicial error employs "a standard more generous to a defendant than the substantial likelihood of a miscarriage of justice standard applied in our review of unpreserved error"). The content of the petitioner's experts' reports may largely have been cumulative of the petitioner's experts' testimony. But the same is true of the QEs' reports introduced by the Commonwealth, with respect to the testimony of the QEs. Only the latter reports, however, were sent with the jury into the jury room, giving them a weight and accessibility during deliberations that the petitioner's evidence did not have. Cf., e.g., *Wingate* v. *Emery Air Freight Corp.*, 385 Mass. 402, 407 (1982) (erroneous admission of report prejudicial in part because "[n]ot only was it read in its entirety to the jury, the jury were permitted to study it in the jury room").

Consequently, the judgment must be vacated and the case remanded for proceedings consistent with this opinion.[6]

*So ordered.*

---

[6]In light of our conclusion, we need not reach the petitioner's other claims of error.