COMMONWEALTH vs. RICHARD FELT.

Middlesex. May 7, 2013. - August 30, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Sex Offender. Practice, Civil,* Sex offender, Dismissal. *Evidence,* Sex offender. *Witness,* Expert, Psychiatric examination. *Statute,* Construction.

This court concluded that the examination a qualified examiner must undertake under G. L. c. 265, § 13 (*a*), as the first step of a sexually dangerous person commitment process must include a personal interview of the individual in accordance with the terms of a court order where the individual does not refuse to be interviewed. [319-324]

Dismissal of the Commonwealth's petition for civil commitment of an individual as a sexually dangerous person was not warranted as a remedy for the refusal of a qualified examiner to conduct an interview pursuant to G. L. c. 265, § 13 (*a*), with counsel in attendance in accordance with the terms of a court order, where another qualified examiner personally interviewed the defendant as part of his § 13 (*a*) examination and filed with the court a report expressing the opinion that the defendant was a sexually dangerous person [324-325]; however, at any subsequent trial, the report and testimony of the qualified examiner who declined to conduct the interview would not be admissible [325-326].

CIVIL ACTION commenced in the Superior Court Department on July 13, 2011.

A motion to dismiss was heard by *Garry V. Inge,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*James D. Kerr,* Assistant District Attorney (*Heidi Lyn Gosule,* Assistant District Attorney, with him) for the Commonwealth.

*David Hirsch,* Committee for Public Counsel Services, for the defendant.

BOTSFORD, J. The defendant, Richard Felt, is the subject of a petition for commitment under G. L. c. 123A, § 12. A judge in the Superior Court allowed a motion for the defendant's counsel to be present during interviews conducted by qualified examin-

ers pursuant to G. L. c. 123A, § 13 (a) (§ 13 [a]).[1] One of the two qualified examiners refused to conduct the interview with counsel in the room and submitted to the court her qualified examiner report based on her review of the defendant's records only. The questions we consider in this case are whether the "examination" that a qualified examiner must undertake under § 13 (a) as the first step of a sexually dangerous person commitment process must include a personal interview of the defendant in accordance with the terms of a court order permitting his counsel to be present; and, if so, what consequences flow from the failure of the qualified examiner to conduct such an interview. We conclude that a personal interview is generally a required component of a § 13 (a) examination, regardless of whether counsel is present. Nevertheless, in the circumstances of this case, dismissal of the Commonwealth's petition was not warranted as a remedy for the refusal of one of the qualified examiners to conduct the interview with counsel in attendance, where the other qualified examiner personally interviewed the defendant as part of his § 13 (a) examination and filed with the court a report expressing the opinion that the defendant is a sexually dangerous person. On remand, however, the Commonwealth may not use at trial the report or testimony of the qualified examiner who refused to interview the defendant.

1. *Background.* In 1988, a jury found the defendant guilty of indecent assault and battery of a victim under the age of fourteen in violation of G. L. c. 265, § 13B, after a six year old boy reported that the defendant had assaulted him in a locker room in Melrose. The Appeals Court affirmed the defendant's conviction in an unpublished memorandum and order issued pursuant to its rule 1:28. While serving a sentence on the 1988 conviction, the defendant escaped from prison and fled to Maine, where he subsequently was convicted of several sexual offenses. In 2005,

---

[1]General Laws c. 123A, § 13 (a) (§ 13 [a]), provides:

"If the court is satisfied that probable cause exists to believe that the person named in the petition is a sexually dangerous person, the prisoner or youth shall be committed to the treatment center for a period not exceeding [sixty] days for the purpose of examination and diagnosis under the supervision of two qualified examiners who shall, no later than [fifteen] days prior to the expiration of said period, file with the court a written report of the examination and diagnosis and their recommendation of the disposition of the person named in the petition."

after serving his Maine sentences, the defendant was transferred back to Massachusetts to complete his sentence on the 1988 conviction and to serve a sentence for escape, G. L. c. 268, § 16.

In July, 2011, before the defendant completed his sentences in Massachusetts, the Commonwealth filed a petition to commit him as a sexually dangerous person under G. L. c. 123A, § 12 (*b*). On October 6, 2011, a judge of the Superior Court found probable cause to believe the defendant was a sexually dangerous person, and the defendant was committed to the Massachusetts Treatment Center (treatment center) for sixty days for examination and diagnosis under the supervision of two qualified examiners pursuant to § 13 (*a*). Before any personal interviews with the qualified examiners occurred, the defendant filed a motion for an order authorizing the defendant's counsel to be present for the interviews, as well as for audio and audio-visual recording of them. The judge allowed the order by agreement "as to the presence of counsel at the evaluation," and the defendant withdrew the request for audio or audio-visual recording.

Thereafter, one of the qualified examiners interviewed the defendant with counsel present for the entire interview. However, when the second qualified examiner met with the defendant to conduct a personal interview, she refused to proceed with the interview while counsel was in the room, and the interview did not take place. On November 14, 2011, both qualified examiners filed with the court their reports opining that the defendant was a sexually dangerous person. The report of the second qualified examiner stated that it was based solely on information from records that were made available to her at the treatment center, as well as a record package prepared by the Commonwealth.[2] On November 18, the Commonwealth petitioned for trial pursuant to G. L. c. 123A, § 14 (*a*), a date within sixty days of the defendant's commitment to the treatment center.

On December 14, 2011, the defendant filed a motion to dismiss the Commonwealth's petition on the ground that because one of the qualified examiners did not interview the defendant, the Commonwealth did not meet its burden of filing within forty-five days of the judge's probable cause finding two qualified

---

[2]The package included court documents, incarceration and commitment records, treatment center records, and prior evaluations and reports of qualified examiners to the court.

examiner reports meeting the requirement of § 13 (*a*) that they be based on an "examination." A different Superior Court judge (motion judge) allowed the defendant's motion to dismiss, concluding that § 13 (*a*) requires a personal interview where the person named in the petition does not refuse to be interviewed and, because the Commonwealth had not filed two qualified examiner reports that were compliant with § 13 (*a*) within the strict deadlines set forth in that section, dismissal was required. The Commonwealth appealed, and we transferred the case to this court on our own motion. The defendant's release was stayed pending appeal.

2. *Discussion.* In reviewing a motion to dismiss a G. L. c. 123A petition, we examine whether the motion judge abused his discretion or committed other legal error. See *Commonwealth v. Gagnon*, 439 Mass. 826, 830 (2003).

The commitment and release of sexually dangerous persons is governed by G. L. c. 123A.[3] This court has recognized that a personal interview need not occur under § 13 (*a*) where a defendant refuses to speak to a qualified examiner in connection with the commitment proceeding. See *Commonwealth v. Connors*, 447 Mass. 313, 315, 319-320 & n.10 (2006) (defendant has right not to speak with qualified examiners in connection with § 13 [*a*] examination based on patient-psychotherapist privilege, G. L. c. 233, § 20B, and constitutional privilege against self-incrimination). This case, however, presents a different issue, because here the defendant appeared at the interview prepared to speak to the qualified examiner with his attorney in attendance, in accordance with the court order authorizing counsel's presence.[4] It was the qualified examiner who refused to conduct the interview, because she objected to the presence of the defendant's attorney. Therefore, the question before us is whether an

[3]For a summary of the statutory scheme governing sexually dangerous person commitment proceedings, see *Johnstone, petitioner*, 453 Mass. 544, 546-547 (2009).

[4]Although § 13 (*a*) does not confer a right to counsel at an interview with a qualified examiner, "[a] judge may, in his or her discretion, permit counsel to be present during a psychiatric examination." *Commonwealth v. Sargent*, 449 Mass. 576, 579 n.5 (2007). The Commonwealth acquiesced in the defendant's motion to authorize the presence of counsel and does not argue on appeal that the Superior Court judge who allowed the defendant's motion abused his discretion in doing so.

interview is required when the interviewer, and not the defendant, refuses to conduct an interview.[5]

We begin with the language of the statute, as "the principal source of insight into legislative purpose." *Commonwealth* v. *Poissant*, 443 Mass. 558, 562 (2005) (quotation and citation omitted). Section 13 (*a*) provides:

> "If the court is satisfied that probable cause exists to believe that the person named in the petition is a sexually dangerous person, the prisoner or youth shall be committed to the treatment center for a period not exceeding [sixty] days for the purpose of examination and diagnosis under the supervision of two qualified examiners who shall, no later than [fifteen] days prior to the expiration of said period, file with the court a written report of the examination and diagnosis and their recommendation of the disposition of the person named in the petition."

The word "examination" is not defined, although in prior cases we have suggested that the terms "examination" and "interview" in the context of § 13 (*a*) are essentially interchangeable. See *Commonwealth* v. *Connors*, 447 Mass. at 317 n.7, quoting *Commonwealth* v. *Poissant*, *supra* at 559 n.1 ("there is, in fact, 'no meaningful distinction between the terms' "). Moreover, and more significantly, § 13 (*a*) specifically requires a sixty-day commitment of the person claimed to be a sexually dangerous person *"for the purpose of examination and diagnosis"* by the qualified medical examiners. We understand this choice of language — the mandatory, time-limited period of commitment and the specific statement of the commitment's purpose — to mean that the Legislature intended the § 13 (*a*) examination to include personal interviews. We do so because there would be no other reason to commit a defendant at this point in the process,[6] given that the qualified examiners could examine the defendant's

---

[5]There has been some suggestion in previous decisions that an interview is a required component of a qualified examiner's "examination and diagnosis" under § 13 (*a*) where a defendant does not refuse the interview, but we have never been called on to answer the precise question. See *Commonwealth* v. *Connors*, 447 Mass. 313, 317 n.7 (2006). See also *Commonwealth* v. *Bradway*, 62 Mass. App. Ct. 280, 288 (2004).

[6]There is no question that the mandatory sixty-day commitment pursuant to § 13 (*a*) can deprive a defendant of liberty. Although the Department of Correction or any other custodial agency must give notice to the district at-

records on their own, regardless of whether he were present. See *Commonwealth* v. *Bradway*, 62 Mass. App. Ct. 280, 288 (2004) (reading § 13 [*a*] to require "a clinical component to the qualified examiners' review" because of statute's provision that person must be committed for "the purpose of examination and diagnosis under the supervision of two qualified examiners").[7]

Moreover, the requirement that qualified examiners conduct personal interviews advances the compelling purpose of commitment proceedings to investigate "a person's current mental condition," *Commonwealth* v. *Bruno*, 432 Mass. 489, 503 (2000), in order to decide "[w]hether [the] person suffers from a mental abnormality or personality defect, as well as the predictive behavioral question of the likelihood that a person suffering from such a condition will commit a sexual offense," *Johnstone, petitioner*, 453 Mass. 544, 549 (2009), quoting *Commonwealth* v. *Dube*, 59 Mass. App. Ct. 476, 483 n.12 (2003).[8] A review of existing criminal and patient records, without an in-person assess-

torney's office of impending release of any person in its custody who has been convicted of a sexual offense six months before the person's discharge date, G. L. c. 123A, § 12 (*a*), the statute recognizes that commitment proceedings may be ongoing at the time the person is scheduled to be released and, to that end, provides mechanisms for commitment to the treatment center after discharge. See G. L. c. 123A, §§ 12 (*e*), 13 (*a*).

[7]Section 14 (*b*) of G. L. c. 123A, which was added at the same time, and in the same act, as § 13 (*a*), see St. 1999, c. 74, § 8, supports this interpretation of the word "examination" in § 13 (*a*). Section 14 (*b*) concerns the trial phase of a commitment proceeding and provides that a person who is the subject of a sexually dangerous person petition "may retain experts or professional persons *to perform an examination* on his behalf" and "[s]uch experts or professional persons *shall be permitted to have reasonable access to such person for the purpose of examination* as well as to all relevant medical and psychological records and reports of the person named in the petition" (emphasis added). This quoted language, with its express directive that experts chosen by the defendant have personal "access" to him "for the purpose of the examination," plainly indicates that the Legislature was defining the word "examination" to include a personal interview of the defendant. "Where the Legislature uses the same words in several sections which concern the same subject matter, the words 'must be presumed to have been used with the same meaning in each section.' " *Commonwealth* v. *Wynton W.*, 459 Mass. 745, 747 (2011), quoting *Insurance Rating Bd.* v. *Commissioner of Ins.*, 356 Mass. 184, 188-189 (1969). See *Booma* v. *Bigelow-Sanford Carpet Co.*, 330 Mass. 79, 82 (1953), and cases cited ("It is a familiar canon of construction, that when similar words are used in different parts of a statute, the meaning is presumed to be the same throughout").

[8]As discussed previously, where a defendant refuses to be interviewed, the

ment of the defendant, is likely to present an incomplete and perhaps incorrect picture of the defendant's current state of mind. See, e.g., *Commonwealth* v. *Boyer*, 61 Mass. App. Ct. 582, 584, 586 (2004) (Commonwealth's expert witness, who had conducted review of defendant's record for purposes of probable cause determination under G. L. c. 123A, § 12 [c], and had concluded defendant was sexually dangerous person, recanted opinion at time of trial based principally on personal interviews with defendant and his wife). We therefore conclude that § 13 (a) requires qualified examiners to conduct personal interviews in accordance with the terms mandated by the court where a defendant does not refuse to be interviewed.[9]

In advancing a contrary reading of § 13 (a), the Commonwealth points to the statutory provision governing petitions for examination and discharge by those committed as sexually dangerous persons, G. L. c. 123A, § 9 (§ 9). Section 9 both contains an express directive that the examinations of a petitioning sexually dangerous person by two qualified examiners "include[] personal interviews" and penalizes a petitioner's refusal to be interviewed by directing that his petition for discharge be dismissed.[10] The Commonwealth argues that the presence of these explicit provisions in § 9 forecloses the possibility that the word "examination" by itself as used in § 13 (a) requires a personal interview. We disagree.

The Legislature amended § 9 in 1987 to add the clause "including personal interviews" as well as the penalty for a petitioner's refusal to be interviewed — twelve years before the Legislature

qualified examiners' reports may be completed without the benefit of personal interviews. However, in such a case, the defendant has elected to limit the extent to which his or her current mental state may be examined.

[9] The duties of a qualified examiner are defined by statute and come into play in the context of court proceedings. The qualified examiner therefore is obliged to perform her duties in accordance with court orders, if any, relating to those proceedings.

[10] General Laws c. 123A, § 9, provides in part:

"The court shall order the petitioner to be examined by two qualified examiners, who shall conduct examinations, including personal interviews, of the person on whose behalf such petition is filed . . . . If such person refuses, without good cause, to be personally interviewed by a qualified examiner appointed pursuant to this section, . . . the petition shall be dismissed upon motion filed by the commonwealth."

added § 13 (*a*) to G. L. c. 123A as part of a comprehensive statutory overhaul designed to improve the sex offender registration system and to reestablish civil commitment and community parole supervision for life for certain sex offenders. See, respectively, St. 1987, c. 116, and St. 1999, c. 74, § 58. Given the temporal gap between these enactments, we do not place much weight on the differences in language between §§ 9 and 13 (*a*).[11] Rather, we understand these differences simply to reflect what appears to be imprecise use of language in separate statutory amendments.[12] Cf. *Santos, petitioner,* 461 Mass. 565, 571 (2012) (interpreting language in §§ 9 and 14 [*c*], listing slightly different

[11]Contrary to the Commonwealth's contention, a defendant's refusal to be interviewed personally as part of a § 13 (*a*) examination *does* result in a penalty — namely, that a defendant may not introduce expert testimony based on a personal interview. *Commonwealth* v. *Connors,* 447 Mass. 313, 318-320 (2006).

[12]The legislative history of § 9 demonstrates that the interview requirement and the penalty for a petitioner's refusal to be interviewed were added for reasons particular to problems with enforcement of § 9, which, as noted, deals solely with petitions of persons who have been committed as sexually dangerous persons and are seeking release. That legislative history includes a letter to the then Governor, Michael S. Dukakis, dated June 2, 1987, from the Attorney General stating that 1987 House Doc. No. 4103 — the bill that inserted the interview requirement and associated penalty provision into § 9, see St. 1987, c. 116 — was designed to discourage petitioners from evading personal interviews because "[q]uite understandably, some of the examiners retained by the [D]epartment [of Mental Health] believe that it is clinically or ethically inappropriate to render an opinion concerning an individual they have not spoken with." The letter further emphasizes that "the refusal to speak to the examiners impedes the quest for a fair and accurate assessment of the petitioner's mental and emotional condition" and that "[c]ommon sense dictates that the reliability of a prediction about someone's future behavior is significantly reduced if the prediction must be made without an oppor[tu]nity to speak to that individual."

While § 9 was the focus, the concerns expressed by the Attorney General in this letter about making a reliable assessment of sexual dangerousness without a personal interview appear to be relevant as well in the context of the initial commitment proceeding to which § 13 (*a*) applies. Indeed, an interview is arguably more important in the context of an initial commitment proceeding than in connection with a petition for release under § 9, because a qualified examiner engaged in connection with a petition for commitment would likely have access to fewer, and less up-to-date, treatment records due to the defendant's relatively recent arrival at the treatment center. Compare § 9 (authorizing filing of petitions for discharge from the treatment center every twelve months), with § 12 (*e*) (commitment to treatment center pending probable cause determination), and § 13 (*a*) (commitment to treatment center after probable cause determination).

types of records deemed admissible at trial of petitions for discharge and for commitment, respectively, to permit admission of same types of records in both because "[w]e construe the two related statutes in a manner that makes them consistent with one another").

Finally, contrary to the Commonwealth's contention, it was not the obligation of the defendant to bring to the attention of the judge the qualified examiner's refusal to conduct the interview in accordance with conditions set by the court order before expiration of the sixty-day period. "Although qualified examiners are independent experts appointed by the court, . . . [i]t is the Commonwealth's responsibility to ensure that the treatment center performs the examinations in a timely manner." *Gangi* v. *Commonwealth*, 462 Mass. 158, 162 (2012) (quotations and citations omitted).

The question then becomes what happens where, as here, one qualified examiner has violated § 13 (*a*) by declining to interview the defendant. The defendant argues, and the motion judge agreed, that the proper remedy is dismissal of the Commonwealth's petition. We decide otherwise.

Dismissal is warranted when a misstep in the commitment process under G. L. c. 123A results in the defendant's commitment to the treatment center for more than the sixty-day period specified in § 13 (*a*). See, e.g., *Gangi* v. *Commonwealth*, 462 Mass. at 159, 160-161 (dismissal required where Commonwealth filed petition for trial sixteen days beyond sixty-day statutory deadline); *Commonwealth* v. *Kennedy*, 435 Mass. 527, 530 (2001) (dismissal required where defendant was committed for more than forty-five days on three separate occasions with no qualified examiner reports on file, resulting in detention for period "vastly in excess of the maximum [period of detention] allowed by the statute"). Dismissal is proper in such cases, we have explained, because "the liberty interests at stake compel strict adherence to the time frames set forth in the statute." *Id.* at 531.

By contrast, the error in this case did not infringe on the defendant's liberty interest. Both qualified examiners timely filed their reports under § 13 (*a*), and the Commonwealth timely filed a petition for trial pursuant to § 14 (*a*). Cf. *Commonwealth* v. *Gagnon*, 439 Mass. 826, 827, 830-831 (2003) (dismissal not required where qualified examiners' reports were filed after

forty-five day statutory deadline because qualified examiners submitted reports and Commonwealth filed petition for trial all within sixty-day period of commitment in § 13 [*a*]). Contrary to the conclusion of the motion judge, a report that is based solely on a record review still qualifies as a "report of examination and diagnosis" under § 13 (*a*). See *Commonwealth* v. *Connors*, 447 Mass. 313, 318-320 (2006) (qualified examiner reports still admissible where defendant refuses to be interviewed personally). Additionally, this court has made clear that the Commonwealth may properly proceed to trial in a commitment proceeding where "at least one of the two qualified examiners . . . opine[s] that the [defendant] [is] sexually dangerous."[13] *Johnstone, petitioner*, 453 Mass. at 553. Because the two qualified examiner reports and the Commonwealth's petition for trial were timely filed within the sixty-day period specified in § 13 (*a*), and at least one of those reports was based on a personal interview with the defendant and concluded that the defendant is a sexually dangerous person,[14] dismissal of the petition is not appropriate.[15]

However, a qualified examiner's refusal to interview the defendant under the terms of a court order, where the defendant agrees to be interviewed under those terms, cannot simply be ignored. Permitting the Commonwealth to introduce the testimony or report of a qualified examiner who refused to conduct an interview would present an incomplete picture of the defendant's current sexual dangerousness and raises questions about the fairness of the commitment proceeding. As discussed in *Commonwealth* v. *Connors*, 447 Mass. at 317-319 & nn.8-9, we are wary of conduct in c. 123A proceedings that "would have allowed 'a distorting effect on the fact finder's role.' " See *id.* at 318-319, quoting *Commonwealth* v. *Wayne W.*, 414 Mass. 218, 231 (1993). Accordingly, where a qualified

---

[13]Although the issue before the court in *Johnstone, petitioner*, 453 Mass. 544 (2009), arose in the context of a § 9 discharge proceeding, the court explicitly stated that the rule applies in the context of initial commitment proceedings under G. L. c. 123A, § 12 (*b*). See *id.* at 550 n.9.

[14]Where a defendant refuses to be interviewed personally by one or both qualified examiners, the Commonwealth may still petition for trial under G. L. c. 123A, § 14 (*a*).

[15]In such circumstances, one qualified examiner's refusal to interview a defendant in no way impairs the defendant's right to introduce at trial expert testimony based on personal interviews under § 14 (*b*).

examiner declines to conduct a personal interview as part of a § 13 (*a*) examination, the qualified examiner's report and testimony shall be inadmissible at any subsequent trial conducted under G. L. c. 123A, § 14.

3. *Conclusion.* The judgment allowing the defendant's motion to dismiss is vacated, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*