## COMMONWEALTH *vs.* NELSON POISSANT.

Bristol. January 6, 2005. - March 2, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Sex Offender. Evidence,* Sex offender. *Practice, Criminal,* Psychiatric examination.

This court concluded that a defendant in a sexually dangerous person proceeding who has been examined by two qualified examiners in accordance with G. L. c. 123A, § 13 (*a*), is not required also to submit to an examination by an expert selected by the Commonwealth [562-564], and a defendant who refuses to participate in such an examination may not be barred from presenting the testimony of his own expert at trial [564-566].

PETITION filed in the Superior Court Department on December 3, 2001.

A motion for release from confinement and a motion to interview were heard by *Robert J. Kane*, J.

An application for leave to prosecute an interlocutory appeal was allowed by *Susan S. Beck*, J., in the Appeals Court, and the case was reported by her to that court. The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Alison R. Bancroft*, Assistant District Attorney (*Mimi McMahon*, Assistant District Attorney, with her) for the Commonwealth.

*Edward E. Eliot* (*David Hirsch*, Committee for Public Counsel Services, with him) for the defendant.

*David Hirsch*, Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

COWIN, J. The primary issue that the parties in this appeal raise is whether a defendant in a sexually dangerous person proceeding who has been examined by two qualified examiners, see G. L. c. 123A, § 13 (*a*), must also submit to an examination

by an expert selected by the Commonwealth. A secondary question is whether, if the defendant refuses to participate in such an examination, he may be barred from presenting the testimony of his own expert at trial.[1] See G. L. c. 123A, § 14 (*b*).

A Superior Court judge found that there was probable cause to believe that the defendant, Nelson Poissant, was a sexually dangerous person within the meaning of G. L. c. 123A, and ordered his commitment to the Massachusetts Treatment Center (treatment center). There, the defendant was examined by two qualified examiners in conformance with G. L. c. 123A, § 13 (*a*), neither of whom concluded that the defendant was a sexually dangerous person. The Commonwealth nevertheless petitioned for trial, and moved for an order that the defendant submit to an interview with the Commonwealth's proposed expert. The motion was denied. The Commonwealth sought interlocutory review of that decision, and we transferred the case to this court on our own motion. We conclude that a defendant need not submit to an examination by an expert selected by the district attorney, and a defendant's refusal to participate in such an examination may not result in the barring of expert testimony presented in his defense at trial.[2]

*Facts.* The facts underlying this appeal are not in dispute. The defendant pleaded guilty to one count of rape of a child (his daughter) and two counts of indecent assault and battery on a child under the age of fourteen years. Prior to his release on December 4, 2001, the Commonwealth filed a petition pursuant to G. L. c. 123A, § 12 (*b*), to commit the defendant as a sexually dangerous person, and an order issued for the temporary commitment of the defendant. See G. L. c. 123A, § 12 (*e*). As a result of a report by a doctor who, based on his review of relevant materials, believed the defendant to be a sexually dangerous person, the judge, on December 13, 2001, continued the defendant's temporary commitment. Due to a series of scheduling conflicts and court congestion, the probable cause

[1]To the extent the parties use the words "interview" and "examination" interchangeably in their briefs, we note that G. L. c. 123A, §§ 13 and 14, refer only to examinations, not interviews. For the purposes of this opinion, there is no meaningful distinction between the terms.

[2]We acknowledge the amicus brief submitted by the Committee for Public Counsel Services.

hearing was delayed for several months, with no objection by the defendant.

Another judge held a probable cause hearing on May 7, 2002, which concluded on May 23, 2002. On October 28, 2002, the judge found that there was probable cause to believe that the defendant met the definition of a sexually dangerous person under G. L. c. 123A,[3] and ordered him committed to the treatment center for the sixty-day examination period mandated by G. L. c. 123A, § 13 (*a*).[4]

During the sixty-day examination period, one qualified examiner interviewed the defendant with defense counsel present. Because the defendant refused to undergo a second examination without counsel present, the second qualified examiner was not able to interview the defendant. Nevertheless, both experts submitted reports to the court on December 13, 2002. One found that the defendant did not suffer a personality disorder likely to cause him to engage in sexual offenses, while the second was unable to conclude that the defendant was likely to re-offend. Despite these reports, the Commonwealth petitioned for a trial to commit the defendant pursuant to G. L. c. 123A, § 14 (*a*).[5],[6]

---

[3]The record contains no explanation for the five-month delay between the probable cause hearing and the judge's finding of probable cause. Absent extraordinary circumstances, such a delay is inexcusable.

[4]General Laws c. 123A, § 13 (*a*), provides:

> "If the court is satisfied that probable cause exists to believe that the person named in the petition is a sexually dangerous person, the prisoner or youth shall be committed to the treatment center for a period not exceeding [sixty] days for the purpose of examination and diagnosis under the supervision of two qualified examiners who shall, no later than [fifteen] days prior to the expiration of said period, file with the court a written report of the examination and diagnosis and their recommendation of the disposition of the person named in the petition."

[5]The relevant portion of G. L. c. 123A, § 14 (*a*), is as follows:

> "The district attorney or the attorney general at the request of the district attorney may petition the court for a trial which shall be by jury unless affirmatively waived by the person named in the petition. Such petition shall be made within [fourteen] days of the filing of the report of the two qualified examiners."

[6]We express no view whether the statute implicitly requires that at least one of the qualified examiners support the position that a defendant is sexually

On January 9, 2003, as allowed by G. L. c. 123A, § 14 (*b*),[7] the defendant informed the Commonwealth that he intended to call his own expert to testify at trial. The Commonwealth then requested that the court order the defendant to submit to an interview by an expert of its selection or, in the alternative, that all evidence and testimony of the defendant's expert be excluded. The defendant opposed this motion, and a judge denied the Commonwealth's request for an interview on February 10, 2003. The judge based his denial both on the protracted nature of the proceedings and on the lack of authority in G. L. c. 123A for examinations by anyone other than the qualified examiners and an examiner selected by the defendant.[8] The Commonwealth appealed the denial of its request for an interview by its expert.

dangerous in order for the Commonwealth to proceed to trial, or whether the continued detention of a defendant would be unconstitutional if both qualified examiners' reports indicated that a defendant was not a sexually dangerous person.

[7]The relevant language of G. L. c. 123A, § 14 (*b*), provides:

> "[T]he person named in the petition may retain experts or professional persons to perform an examination on his behalf. Such experts or professional persons shall be permitted to have reasonable access to such person for the purpose of the examination as well as to all relevant medical and psychological records and reports of the person named in the petition. If the person named in the petition is indigent under [G. L. c. 211D, § 2], the court shall, upon such person's request, determine whether the expert or professional services are necessary and shall determine reasonable compensation for such services. If the court so determines, the court shall assist the person named in the petition in obtaining an expert or professional person to perform an examination and participate in the trial on such person's behalf. The court shall approve payment for such services upon the filing of a certified claim for compensation supported by a written statement specifying the time expended, services rendered, expenses incurred and compensation received in the same case or for the same services from any other source. . . . If such person intends to rely upon the testimony or report of his qualified examiner, the report must be filed with the court and a copy must be provided to the district attorney and attorney general no later than ten days prior to the scheduled trial."

[8]The judge also ordered that the defendant be interviewed by the second qualified examiner without defense counsel present, and that a video recording of the interview be made. The defendant expressed willingness to abide by these conditions.

*Discussion.* In interpreting G. L. c. 123A to determine whether a defendant must submit to an examination by an expert selected by the Commonwealth, we look first to the language of the statute. "[S]tatutory language is the principal source of insight into legislative purpose." *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transp. Auth.*, 392 Mass. 407, 415 (1984), quoting *Bronstein* v. *Prudential Ins. Co.*, 390 Mass. 701, 704 (1984). The language of c. 123A makes no provision for a separate examiner selected by the Commonwealth. The sections of the statute concerning the commitment of sexually dangerous persons refer to examiners in only three contexts. First, G. L. c. 123A, § 13 (*a*), requires examination and diagnosis by two "qualified examiners" during the sixty-day evaluation period. General Laws c. 123A, § 1, defines a qualified examiner as "a physician who is licensed pursuant to [G. L. c. 112, § 2,] who is either certified in psychiatry by the American Board of Psychiatry and Neurology or eligible to be so certified, or a psychologist who is licensed. . . . ; provided, however, that the examiner has had two years of experience with diagnosis or treatment of sexually aggressive offenders and is designated by the commissioner of correction." The statute also authorizes an examiner for the defendant, whom the defendant may retain both during the sixty-day examination period, see G. L. c. 123A, § 13 (*d*),[9] and after the petition for trial is filed, see G. L. c. 123A, § 14 (*b*). If the defendant is indigent, the court must provide for or assist the defendant in obtaining such an examiner. See G. L. c. 123A, §§ 13 (*d*), 14 (*b*). In addition, after a person has been adjudicated sexually dangerous, that person may petition for discharge, and if he does so, the court is to order an examina-

---

[9]General Laws c. 123A, § 13 (*d*), states:

"Any person subject to an examination pursuant to the provisions of this section may retain a psychologist or psychiatrist who meets the requirements of a qualified examiner, as defined in [G. L. c. 123A, § 1], to perform an examination on his behalf. If the person named in the petition is indigent, the court shall provide for such qualified examiner."

tion by two qualified examiners. See G. L. c. 123A, § 9.[10] There is no other mention of examiners in the statute. Chapter 123A thus does not authorize any further examinations by a Commonwealth expert. "We will not add words to a statute that the Legislature did not put there, either by inadvertent omission or by design." *Commonwealth* v. *Callahan*, 440 Mass. 436, 443 (2003), quoting *Commonwealth* v. *McLeod*, 437 Mass. 286, 294 (2002), and cases cited. See *Civitarese* v. *Middleborough*, 412 Mass. 695, 700 (1992) ("We will not read into the plain words of a statute a legislative intent that is not expressed by those words").

A review of other provisions within the sexually dangerous person statute supports our conclusion that the Legislature did not intend to require the defendant to submit to examination by anyone other than the two qualified examiners. "[A] statute should be read as a whole to produce an internal consistency." *Telesetsky* v. *Wight*, 395 Mass. 868, 873 (1985). Under § 9 (petition for discharge), if a person who has been committed "refuses, without good cause, to be personally interviewed by a qualified examiner . . . , such person shall be deemed to have waived his right to a hearing on the petition and the petition shall be dismissed upon motion filed by the [C]ommonwealth." G. L. c. 123A, § 9. Had the Legislature intended to mandate an examination by a Commonwealth expert in the commitment scheme, it would presumably have provided a penalty for a failure to do so, just as it provided such a penalty in § 9. In the

---

[10]The relevant portion of G. L. c. 123A, § 9, is as follows:

"The court shall order the petitioner to be examined by two qualified examiners, who shall conduct examinations, including personal interviews, of the person on whose behalf such petition is filed and file with the court written reports of their examinations and diagnoses, and their recommendations for the disposition of such person. Said reports shall be admissible in a hearing pursuant to this section. If such person refuses, without good cause, to be personally interviewed by a qualified examiner appointed pursuant to this section, such person shall be deemed to have waived his right to a hearing on the petition and the petition shall be dismissed upon motion filed by the [C]ommonwealth. The qualified examiners shall have access to all records of the person being examined."

absence of a similar penalty clause in the commitment sections, we cannot read one into the statute.

Citing *Commonwealth* v. *Bruno*, 432 Mass. 489, 511 (2000), the Commonwealth argues that the absence of statutory authorization for its expert to examine the defendant is not determinative. The Commonwealth is correct that, in the *Bruno* case, we concluded that, despite the lack of a statutory mandate, the Commonwealth must produce expert testimony to support a G. L. c. 123A, § 12, petition for temporary commitment. *Id.* Our interpretation today is not inconsistent with the *Bruno* case. That case only requires that there be expert testimony; it does not prescribe the form that testimony will take or the extent of examination of the defendant, if any, that precedes that testimony. Here, the Legislature has enacted such a prescription.

The Commonwealth contends that it is disadvantaged because, while the defendant can have an expert to advocate his position, the qualified examiners are not agents of the district attorney's office and thus there is no advocate for the government. Whether the qualified examiners are agents of the district attorney is irrelevant to the issue before us. The Legislature has not contemplated a typical advocacy proceeding here. The sexually dangerous person proceeding presents a unique situation: the defendant is incarcerated beyond the length of his mandated sentence because of his sexual dangerousness. Although these proceedings are not criminal, see *Commonwealth* v. *Bruno*, *supra* at 500-502, they do result in the deprivation of the defendant's freedom. For this atypical situation, the Legislature has seen fit to impose unusual requirements. The statute envisions that the defendant will be examined by two qualified examiners and gives the Commonwealth access to the expert testimony of those qualified examiners. That the qualified examiners conclude that the defendant is no longer sexually dangerous does not permit the Commonwealth to conduct further examination of the defendant over his objection.

The Commonwealth maintains that the rule of *Blaisdell* v. *Commonwealth*, 372 Mass. 753, 766-769 (1977), applies here. The *Blaisdell* case holds that a defendant who raises his mental state through expert testimony has waived his privilege against self-incrimination and must submit to psychiatric examination

by an expert selected by the Commonwealth. *Id.* According to the Commonwealth, the *Blaisdell* holding would require that a defendant here submit to examination by an expert selected by the Commonwealth if he wishes to introduce expert testimony of his own. But unlike the situation in the *Blaisdell* case (and its progeny, *Commonwealth* v. *Diaz*, 431 Mass. 822, 828-830 [2000]; *Commonwealth* v. *Contos*, 435 Mass. 19, 23-26 [2001]; and *Commonwealth* v. *Ostrander*, 441 Mass. 344, 351-355, cert. denied, 125 S. Ct. 210 [2004]), the defendant in the c. 123A process has not injected his own mental state into the proceedings. It is the Commonwealth that has placed the defendant's mental state at issue by initiating the commitment proceedings. The defendant is entitled to respond and, by so doing, waives none of the protections set forth in the statute.

The *Blaisdell* rule is intended to correct a potential imbalance. A "defendant who seeks to put in issue his statements as the basis of psychiatric expert opinion in his behalf opens to the State the opportunity to rebut such testimonial evidence in essentially the same way as if he himself had testified." *Blaisdell* v. *Commonwealth, supra* at 766. Otherwise, a defendant could use expert evidence to assert a defense based on his mental state, and at the same time assert the privilege against self-incrimination to avoid being interviewed by a Commonwealth expert. The Commonwealth would be at an unfair disadvantage, unable to rebut effectively the defendant's expert testimony. No such imbalance exists in a sexually dangerous person proceeding, as the statute has already corrected for it. Section 13 (*a*) mandates that the defendant be examined by two qualified examiners. The Commonwealth cannot seek successive examinations by different experts until it obtains the opinion it desires.[11]

The Commonwealth seeks support from Mass. R. Civ. P. 35 (*a*), 365 Mass. 793 (1974), pursuant to which a court "may order [a] party to submit to a physical or mental examination by a physician . . . for good cause shown." However, in the cases involving the rule cited by the Commonwealth, good cause is

---

[11]The *Blaisdell* case and its progeny are all criminal cases. As we stated *supra*, the sexually dangerous person process is civil in nature. See *Commonwealth* v. *Bruno*, 432 Mass. 489, 500-502 (2000).

found because the party ordered to submit to an examination has placed his own mental state in controversy, creating a potential imbalance unless an examination by the opposing party is allowed. Here, the defendant has not put his mental state at issue. Compare *Schlagenhauf* v. *Holder*, 379 U.S. 104, 119 (1964) (a "plaintiff in a negligence action who asserts mental or physical injury . . . places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury"); *Duncan* v. *Upjohn Co.*, 155 F.R.D. 23, 25 (D. Conn. 1994) (negligence plaintiff claiming ongoing psychiatric harm put psychiatric state into suit and must submit to interview by defendant's expert); *Tomlin* v. *Holecek*, 150 F.R.D. 628, 630 (D. Minn. 1993) (same); *Lowe* v. *Philadelphia Newspapers, Inc.*, 101 F.R.D. 296, 298-299 (E.D. Pa. 1983) (same holding for employment discrimination suit alleging emotional damages).

*Conclusion.* The order of the Superior Court denying the Commonwealth's motion to interview the defendant is affirmed.

*So ordered.*