COMMONWEALTH VS. SCOTT HANRIGHT.

Suffolk. February 7, 2013. - June 17, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Practice, Criminal,* Discovery, Psychiatric examination, State of mind, Record. *Rules of Criminal Procedure. Psychotherapist. Evidence,* State of mind, Medical record. *Constitutional Law,* Self-incrimination.

Discussion of Mass. R. Crim. P. 14 (b) (2) (B), as amended, 463 Mass. 1501 (2012), which requires a criminal defendant to notify the Commonwealth if he or she intends at trial to raise as an issue his or her mental condition at the time of the alleged crime or intends to introduce expert testimony on his or her mental condition at any stage of the proceeding, and, under certain circumstances, to submit to an examination; and of case law interpreting the examination allowance in the rule. [641-643]

This court concluded that Mass. R. Crim. P. 14 (b) (2) (B), as amended, 463 Mass. 1501 (2012), permits pretrial discovery of a defendant's medical and psychiatric records in connection with a rule 14 (b) (2) (B) psychiatric examination. [643-645] LENK, J., dissenting, with whom BOTSFORD and DUFFLY, JJ., joined.

In a criminal case, in which the defendant, pursuant to Mass. R. Crim. P. 14 (b) (2), as amended, 442 Mass. 1518 (2004), notified the Commonwealth that he intended to offer expert testimony concerning his mental state at the time of the alleged crime as part of his defense of a lack of criminal responsibility, and that the expert would rely, in part, on the defendant's statements as to his mental condition at that time, the judge erred in denying a motion by the Commonwealth seeking, inter alia, disclosure of the custodians and production of the defendant's medical and psychiatric records, where, even assuming that pretrial discovery of the defendant's treatment provider information or records implicated the defendant's constitutional privilege against self-incrimination, the defendant waived this constitutional privilege by giving notice of an intent to offer expert testimony regarding his mental state, based in part on his statements, to the extent that a court could order the defendant to submit to an examination pursuant to Mass. R. Crim. P. 14 (b) (2) (B), as amended, 463 Mass. 1501 (2012), including all that a comprehensive examination entails; likewise, the defendant waived any privilege afforded by G. L. c. 233, § 20B, in his mental health treatment records to the extent that the defendant could be obliged to submit to the same court-ordered examination. [645-648] LENK, J., dissenting, with whom BOTSFORD and DUFFLY, JJ., joined.

This court asked its standing advisory committee on the rules of criminal procedure (committee) to consider the scope of disclosure of a defendant's medical and psychiatric records in connection with an examination required

by Mass. R. Crim. P. 14 (b) (2) (B), as amended, 463 Mass. 1501 (2012), in circumstances in which the defendant has notified the Commonwealth that he intends to offer expert testimony concerning his mental state at the time of the alleged crime as part of his defense of a lack of criminal responsibility, and that the expert will rely, in part, on the defendant's statements as to his mental condition at that time, and to propose a mechanism whereby both the defense expert and the rule 14 (b) (2) (B) examiner have an equal opportunity to access the records they deem necessary to conduct a psychiatric evaluation, while preserving a defendant's ability to object to such disclosure; further, this court announced that until the committee has the opportunity to consider these issues, it would require a defendant to provide the rule 14 (b) (2) (B) examiner with the same records provided to or considered by the defense expert. [648-649] LENK, J., dissenting, with whom BOTSFORD and DUFFLY, JJ., joined.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on July 5, 2012.

The case was reported by *Lenk,* J.

*Fawn D. Balliro Andersen,* Assistant District Attorney (*Marian T. Ryan,* Assistant District Attorney, with her) for the Commonwealth.

*John P. Osler,* Committee for Public Counsel Services, for the defendant.

SPINA, J. The issue in this appeal is whether Mass. R. Crim. P. 14 (b) (2) (B), as amended, 463 Mass. 1501 (2012), permits pretrial discovery of a defendant's medical and psychiatric records in connection with a rule 14 (b) (2) (B) psychiatric examination. The answer must be yes.

1. *Background.* A grand jury returned twenty-two indictments against the defendant on various charges, including murder in the first degree and various counts of masked armed robbery. These indictments arose out of a robbery of a jewelry counter at a department store in Woburn during which a police officer was killed. Pursuant to Mass. R. Crim. P. 14 (b) (2), as amended, 442 Mass. 1518 (2004), the defendant notified the Commonwealth that he intends to offer expert testimony concerning his mental state at the time of the alleged crime as part of his defense of a lack of criminal responsibility, and that the expert will rely, in part, on the defendant's statements as to his mental condition at that time. The Commonwealth moved for a court-ordered psychiatric examination of the defendant pursuant to

G. L. c. 123, § 15 (*a*). In addition, the Commonwealth sought a court order requiring the defendant to disclose the names and addresses of all persons having custody of any of his medical and psychiatric records, and the production of all such treatment records to the court. The Commonwealth's purpose in seeking the defendant's medical records is to allow the rule 14 (b) (2) (B) examiner to review them in connection with the independent examination of the defendant's criminal responsibility. The motion judge allowed the portion of the Commonwealth's motion seeking an independent psychiatric examination of the defendant, but denied the portion of the motion requesting disclosure of the custodians and production of the defendant's medical and psychiatric records. The Commonwealth then filed a petition in the county court pursuant to G. L. c. 211, § 3, seeking relief from the partial denial of its discovery motion, and a single justice reserved and reported the case to the full court, pursuant to Mass. R. Civ. P. 64 (a), as amended, 423 Mass. 1410 (1996).

2. *Rule 14 (b) (2) (B).* As our task is to interpret a rule of criminal procedure, we begin with the plain language of the rule. Massachusetts Rule of Criminal Procedure 14 (b) (2) (A), as amended, 463 Mass. 1501 (2012),[1] requires a defendant to notify the Commonwealth if he or she "intends at trial to raise as an issue his or her mental condition at the time of the alleged crime, or . . . intends to introduce expert testimony on [his or her] mental condition at any stage of the proceeding." Rule 14 (b) (2) (B) states:

> "(B) If the notice of the defendant or subsequent inquiry by the judge or developments in the case indicate that statements of the defendant as to his or her mental condition will be relied upon by a defendant's expert witness,

[1]When the defendant submitted his notice of intent to offer expert testimony regarding his mental state and the motion judge ruled on the Commonwealth's responsive motion, Mass. R. Crim. P. 14 (b) (2), as appearing in 442 Mass. 1518 (2004), was in effect. In the time between the motion judge's denial of the Commonwealth's motion and the single justice's decision to reserve and report this case to the full court, Rule 14 was amended, and the amendments became effective. Mass. R. Crim. P. 14, as amended, 463 Mass. 1501 (2012). Because the parties proceed under the assumption that the current version of rule 14 applies to this case, we do the same. Nevertheless, our disposition would be the same were we to apply the previous version of rule 14.

the court, on its own motion or on motion of the prosecutor, may order the defendant to submit to an *examination* consistent with the provisions of the General Laws and subject to the following terms and conditions:

"(i) The *examination* shall include such physical, psychiatric, and psychological tests as the examiner deems necessary to form an opinion as to the mental condition of the defendant at the relevant time. . . ." (Emphases added.)

The rule outlines additional procedural details concerning the requisite reports of both the defendant's and Commonwealth's expert witnesses. In relevant part, the rule as amended requires that "[t]he reports of both parties' experts must include a written summary of the expert's expected testimony that *fully describes: the defendant's history* and present symptoms . . . [and] the bases and reasons for [the expert's] opinions" (emphasis added). Mass. R. Crim. P. 14 (b) (2) (B) (iii).

The motion judge denied the portion of the Commonwealth's motion that sought access to the defendant's treatment records because he read rule 14 (b) (2) (B)'s "examination" allowance narrowly as precluding pretrial discovery of the defendant's medical and psychiatric records. He found support for his interpretation in this court's language in *Commonwealth* v. *Sliech-Brodeur*, 457 Mass. 300, 318, 321 (2010) (*Sliech-Brodeur*), in which we stated, prior to the recent amendments, that "rule 14 (b)(2) exclusively governs pretrial discovery relating to a lack of criminal responsibility defense," and that "the rule *only* authorizes a court-ordered psychiatric examination of the defendant by the Commonwealth's expert, and nothing more." The Commonwealth's position, in contrast, is that rule 14 (b) (2) (B) permits pretrial discovery of a defendant's medical and psychiatric records on behalf of the rule 14 (b) (2) (B) examiner.[2] "The proper guide to discovery practices should [be]

[2]Although the Commonwealth sought *both* provider information and substantive records, as a technical matter, it only seeks disclosure of provider information *from the defendant.* Of course, the Commonwealth is not interested in the list of the defendant's treatment providers for its own sake, but as a means of obtaining the defendant's medical and psychiatric records *from his clinicians.* For this reason, we focus mainly on the substantive disclosure of the defendant's treatment records to the rule 14 (b) (2) (B) examiner.

the degree to which discovery will enhance the reliability of factfinding." *Commonwealth* v. *Durham,* 446 Mass. 212, 224, cert. denied, 549 U.S. 855 (2006), quoting Brennan, The Criminal Prosecution: Sporting Event or Quest for Truth? A Progress Report, 68 Wash. U. L.Q. 1, 2-3, 8 (1990). See *Commonwealth* v. *Paszko,* 391 Mass. 164, 187-188 (1984) (rule 14 "favors liberal discovery"). "[W]e are the final arbiter of what the rule means and permits," *Commonwealth* v. *Durham, supra* at 221, and we conclude that the Commonwealth has the stronger position.

Rule 14 (b) (2) (B) outlines the circumstances under which a defendant may be required to submit to an "examination." Because the express language of rule 14 (b) (2) (B) allows for an "examination," so too does it allow for all that is inherent in a psychiatric examination. As a general matter, review of treatment records is an important aspect of a comprehensive and meaningful psychiatric examination.[3] See American Psychiatric Association, Practice Guideline for the Psychiatric Evaluation of Adults 9, 14 (2d ed. 2010); D. Shuman, Psychiatric and Psychological Evidence § 2:21, at 2-43 (3d ed. 2005 & Supp. 2012). We find further support for our conclusion that the rule permits discovery of the defendant's treatment records on behalf of the rule 14 (b) (2) (B) examiner in the language of rule 14 (b) (2) (B) (iii), as amended in 2012, which states that "[t]he reports of *both parties' experts* must include a written summary of the expert's expected testimony that *fully describes*: the *defendant's history* and present symptoms" (emphases added). A rule 14 (b) (2) (B) examiner can only fully describe the defendant's history if permitted access to the defendant's treatment records. Because review of treatment records is necessary, both to conduct a meaningful examination and to produce the requisite

---

[3]Moreover, inherent in the requirement of rule 14 (b) (2) (B) that the defendant "*submit* to an examination," should the court so order, is the obligation that the defendant cooperate with the rule 14 (b) (2) (B) examiner to the same extent as with the defense expert, including disclosing information about his treatment history (emphasis added). See rule 14 (b) (2) (B) (iv). Requiring such disclosure advances our interests in speedy and efficient trial preparation, given that healthcare information is generally within the defendant's knowledge and control. See *Blaisdell* v. *Commonwealth,* 372 Mass. 753, 766-767 (1977).

report, discovery of a defendant's treatment records is permitted pursuant to rule 14 (b) (2) (B).

The ability of the rule 14 (b) (2) (B) examiner to access a defendant's medical and psychiatric records furthers rule 14 (b) (2) (B)'s truth-seeking function. See *Blaisdell* v. *Commonwealth*, 372 Mass. 753, 766 (1977). An examiner who has reviewed a defendant's treatment records is in the best position to produce a report that describes the defendant's mental health status at the time of the alleged offense with the greatest accuracy. See *Commonwealth* v. *Diaz*, 431 Mass. 822, 828 (2000).

Moreover, an examiner's access to a defendant's treatment records typically is necessary because patients often are "poor historians" of even their own medical history. *Commonwealth* v. *Alvarez*, 433 Mass. 93, 94, 103 (2000). Without the defendant's treatment records, the rule 14 (b) (2) (B) examination will be based only on the defendant's word, without any means of verification. D. Shuman, Psychiatric and Psychological Evidence, *supra*. Thus, interpreting rule 14 (b) (2) (B) as allowing the examiner access to the defendant's medical records advances our interest in "prevent[ing] fraudulent mental [health] defenses." *Commonwealth* v. *Ostrander*, 441 Mass. 344, 354, cert. denied, 543 U.S. 867 (2004), quoting *Schneider* v. *Lynaugh*, 835 F.2d 570, 576 (5th Cir.), cert. denied, 488 U.S. 831 (1988). It also advances the fairness objective that underlies the Commonwealth's reciprocal ability to evaluate the defendant's mental health pursuant to rule 14 (b) (2) (B), particularly where the defendant's expert has access to the defendant's medical records. See *Commonwealth* v. *Alvarez*, *supra* at 100-104 & n.9; Reporters' Notes to Mass. R. Crim. P. 14, Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1522 (LexisNexis 2012) (importance of "giving the prosecution an opportunity to obtain equivalent access for its expert"). It is only fair that the Commonwealth have the opportunity to rebut the defendant's mental health evidence using the same resources that should be made available to defendant's medical expert.[4] See *Blaisdell* v. *Commonwealth*, *supra*, citing *United States* v. *Baird*, 414 F.2d

---

[4]The defendant objects to the rule 14 (b) (2) (B) examiner's discovery of treatment records that defense counsel did not intend to provide to his own defense expert. However, we have said that defense counsel renders ineffec-

700 (2d Cir. 1969), cert. denied, 396 U.S. 1005 (1970). A system in which only the defendant's expert may use the defendant's medical and psychiatric records to form an opinion regarding the defendant's mental health "would have a 'distorting effect on the fact finder's role,' " and would "undermine 'society's conduct of a fair inquiry.' " *Commonwealth* v. *Ostrander*, *supra*, quoting *Commonwealth* v. *Wayne W.*, 414 Mass. 218, 231 (1993). See *Commonwealth* v. *Poissant*, 443 Mass. 558, 565 (2005).

This case is distinguishable from *Sliech-Brodeur, supra* at 319 n.27, 323 n.31, where we concluded that a defendant was not obliged to provide the Commonwealth with notes and materials of the defendant's own psychiatric expert pursuant to rule 14 (b) (2) (B). Unlike access to materials generated contemporaneously by the defense, allowing a rule 14 (b) (2) (B) examiner access to a defendant's treatment records is part and parcel of a rule 14 (b) (2) (B) examination. Our conclusion that rule 14 (b) (2) (B) permits discovery of materials that are available to, as opposed to generated by, the defense is consistent with the general precept that rule 14 (b) (2) (B) permits discovery of "helpful medical and psychiatric information at any point in the proceedings pertaining to the trial issue of the defendant's criminal responsibility," provided a defendant's rights are protected. *Blaisdell* v. *Commonwealth, supra* at 756-757.

3. *Privilege.* The defendant argues that requiring him to disclose his treatment history violates his privilege against self-incrimination under the Fifth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. The motion judge determined that disclosure of the substance of the defendant's treatment records "does not seem to implicate the privilege against governmentally compelled self-incrimination." He suggested, however, that the psychotherapist-

tive assistance in failing to provide relevant medical records to the defense expert. *Commonwealth* v. *Alvarez*, 433 Mass. 93, 100-104 (2000). Thus, we expect that defense counsel will provide the defense expert with the records necessary to conduct a meaningful psychiatric evaluation. Should defense counsel fail in his or her duty to provide the defense examiner with such records, the appropriate response should not be to similarly handicap the Commonwealth's expert.

patient privilege of G. L. c. 233, § 20B, may insulate the defend-
ant's psychiatric records from discovery.

The particulars of any of the defendant's treatment records
are unknown at this stage of the litigation. Nevertheless, even
assuming that pretrial discovery of a defendant's treatment
provider information or records implicates the privilege against
self-incrimination,[5] the defendant waived this *constitutional*
privilege when he gave notice of his intent to offer expert
testimony regarding his mental state, based in part on his state-
ments, to the extent that the court could then order him to
submit to a rule 14 (b) (2) (B) examination, including all that a
comprehensive examination entails. See *Blaisdell* v. *Com-
monwealth, supra* 766-767. See also *Commonwealth* v. *Calla-
han*, 386 Mass. 784, 789 (1982), *S.C.*, 401 Mass. 627 (1988)
(limited waiver); *Commonwealth* v. *Goulet*, 374 Mass. 404, 411
n.4 (1978) (implied waiver). Disclosure of treatment records to
the rule 14 (b) (2) (B) examiner falls within the scope of the
limited waiver effectuated when a defendant is required to submit
to a rule 14 (b) (2) (B) examination. See *Commonwealth* v.
*Durham*, 446 Mass. 212, 228 (2006), quoting *State* v. *Angeleri*,
51 N.J. 382, 385, cert. denied, 393 U.S. 951 (1968) ("[n]othing
in the State or Federal Constitution guarantees a defendant 'a
right so to defend as to deny the State a chance to check the
truth of his position' ").

Likewise, the defendant waived any *statutory* privilege in his
mental health treatment records to the extent that he may be
obliged to submit to the same court-ordered examination pursu-
ant to rule 14 (b) (2) (B).[6] See *Commonwealth* v. *Connors*, 447
Mass. 313, 319 & n.10 (2006). Not only does G. L. c. 233,

_____

[5]Compare, e.g., *Commonwealth* v. *Trapp*, 396 Mass. 202, 212 (1985), *S.C.*,
423 Mass. 356, cert. denied, 519 U.S. 1045 (1996) (rejecting claim that
pretrial discovery orders requiring defendant to disclose nontestimonial, medi-
cal and psychological tests implicated Fifth Amendment or art. 12), and *Com-
monwealth* v. *Brennan*, 386 Mass. 772, 779-783 (1982), with *Commonwealth*
v. *Hughes*, 380 Mass. 583, 592 & n.11, cert. denied, 449 U.S. 900 (1980)
(order requiring defendant to produce gun effectively compels testimony as to
its existence); and *Jones* v. *Superior Court of Nevada County*, 58 Cal. 2d 56,
60 (1962) (privilege against self-incrimination implicated where prosecution
"seeks the benefit of [defendant's] knowledge of . . . the existence of [treat-
ment records] for the purpose of preparing its case against him").

[6]Although confidential, see H.J. Alperin, Summary of Basic Law § 10.77,

§ 20B, expressly contemplate waiver, but, in *Commonwealth* v. *Connors, supra,* we rejected "attempts to distinguish the waiver of the constitutional right against self-incrimination from the waiver of the 'patient-psychotherapist privilege' afforded by G. L. c. 233, § 20B." *Id.* at 319 n.10. There, we stated that "[t]he defendant waived *both* privileges when he spoke to his own expert and attempted to have his own statements introduced at trial" (emphasis supplied), *id.,* and reasoned that "the defendant cannot selectively invoke [the psychotherapist-patient] privilege as to the court-appointed experts, and not as to his own expert." *Id.* at 319. Therefore, there is no statutory impediment to the rule 14 (b) (2) (B) examiner's review of a defendant's mental health treatment records.

Regardless, pursuant to rule 14 (b) (2) (B), the defendant's treatment provider information and records will, initially, be made available to the rule 14 (b) (2) (B) examiner only. Absent the defendant's consent, information regarding the defendant's treatment history will not be revealed to the prosecution prior to the mutual exchange of the expert's reports.[7] See rule 14 (b) (2) (B) (ii), (iii). Such mutual exchange occurs no later than when the defendant expresses a "clear intent to raise as an issue his or her mental condition, and the judge is satisfied that (1) the defendant intends to testify, or (2) the defendant intends to offer expert testimony based in whole or in part on statements made by the defendant as to his or her mental condition at the relevant time." Rule 14 (b) (2) (B) (iii). See *Sliech-Brodeur, supra* at 338 (Gants, J., dissenting). Thereafter, the Commonwealth may only use information regarding the defendant's treatment history as part of its rebuttal against the defendant's claim of impaired mental health, which necessarily occurs after the defendant has raised his mental condition at trial. Moreover,

at 231, 233 (4th ed. 2006), medical records (as opposed to psychiatric records) are not statutorily privileged. See *Bratt* v. *International Business Machs. Corp.,* 392 Mass. 508, 522 n.22 (1984) (no physician-patient privilege). Moreover, the psychotherapist-patient privilege "does not protect the existence of the fact of a hospital admission, the dates of hospitalization or even the purpose of the admission." *Commonwealth* v. *Clancy,* 402 Mass. 664, 667 (1988). The privilege applies only to "communications." See G. L. c. 233, § 20B; *Commonwealth* v. *Seabrooks,* 433 Mass. 439, 448 n.8 (2001) (same).

[7] The defendant does not object to the prosecution's discovery of his treatment history on the release of the experts' reports.

the rules of evidence and G. L. c. 233, § 23B, which states that "no statement made by a defendant therein subjected to psychiatric examination . . . shall be admissible in evidence against him on any issue other than that of his mental condition, nor shall it be admissible in evidence against him on that issue if such statement constitutes a confession of guilt of the crime charged," provide additional protection from the prosecution's misuse at trial of any information regarding the defendant's treatment history.

4. *Procedure.* Here, the Commonwealth has requested disclosure of all persons having custody of any of the defendant's medical and psychiatric records, and production of all such treatment records to the court, without limitation as to date or type of treatment. Although we recognize the broad scope of this request, we likewise recognize the many factors that may bear on a defendant's mental condition.[8] We are also concerned that a defendant may "cherry pick" from amongst his or her treatment records, disclosing the existence of documents that advance a mental impairment claim, and secreting those that do not. See *Sliech-Brodeur, supra* at 332, 346 (Gants, J., dissenting). Cf. *Commonwealth* v. *Alvarez,* 433 Mass. 93, 100-104 (2000). In light of these considerations, we ask this court's standing advisory committee on the rules of criminal procedure (committee) to consider the scope of requisite disclosure and to propose a mechanism whereby both the defense expert and the rule 14 (b) (2) (B) examiner have an equal opportunity to access the records they deem necessary to conduct a psychiatric evaluation, while preserving a defendant's ability to object to such disclosure.[9]

Until the committee has the opportunity to consider these issues, we follow a "same records" approach whereby a defend-

---

[8]For example, medical records concerning a defendant's physical condition may prove highly relevant to the issue whether a defendant suffered from impaired mental health at the time of an alleged offense. See *Commonwealth* v. *Alvarez, supra* at 101. See also M.G. Perlin & D. Cooper, 2 Massachusetts Proof of Cases § 36:6, at 45 (2012 ed.) ("The whole conduct of the defendant from childhood, including evidence of the defendant's physical condition, has been admitted to prove insanity at the time of committing the crime").

[9]We expect that neither examiner will need to review records that are irrelevant to the issue of the defendant's mental condition at the time of the commission of the alleged offense.

ant is to provide the rule 14 (b) (2) (B) examiner with the same records provided to or considered by the defense expert.[10] A rule 14 (b) (2) (B) examiner may also ask a defendant directly for the names, addresses, dates of treatment, and areas of specialized practice of all treatment providers, and a defendant should answer to the best of his or her ability. Should the rule 14 (b) (2) examiner discover, either from speaking with the defendant or reviewing the treatment records provided, that records necessary to conduct a psychiatric evaluation have not been disclosed, the examiner may request the clerk of court to subpoena such records. G. L. c. 111, § 70; 45 C.F.R. § 164.512(e) (2012) (Health Insurance Portability and Accountability Act of 1996 allows disclosure pursuant to court order). Upon receipt of any subpoenaed records, the clerk shall send a copy to both the rule 14 (b) (2) (B) examiner and the defense examiner for use in connection with their respective examinations, and shall keep a set of the records under seal. Defense counsel may also access the defendant's treatment records, and have the opportunity to move to exclude any material he or she believes to be objectionable.

5. *Conclusion.* We reverse the motion judge's order in so far as it denies the Commonwealth's motion for access to the defendant's medical and psychiatric records on behalf of the rule 14 (b) (2) (B) examiner, and remand the case for further proceedings consistent with this opinion.

*So ordered.*

LENK, J. (dissenting, with whom Botsford and Duffly, JJ., join). The court today effects a sea change in the scope of discovery permitted in conjunction with a psychiatric examination pursuant to Mass. R. Crim. P. 14 (b) (2) (B), as amended, 463 Mass. 1501 (2012) (rule 14 [b] [2] [B]). I write separately because I believe this sweeping expansion of the discovery obligation, representing a significant departure from current practice, is premature and unwise.

Although the court purports to refer the "scope of requisite

---

[10]At the least, such disclosure should include the psychiatric records the defendant referenced in his journal.

disclosure" required by rule 14 (b) (2) (B), *ante* at 648, to the standing advisory committee on the rules of criminal procedure (committee), the committee is in reality not being asked to advise whether a vastly expanded scope of discovery is necessary or appropriate. The court today has essentially already defined that scope to include the disclosure of all of an individual's medical and psychiatric treatment providers from any time in his or her life. *Ante* at 648-649. The committee is instead being asked only to implement that expansion.

In concluding that such mandatory discovery is no more than "part and parcel" of a rule 14 (b) (2) (B) examination, *ante* at 645, the court decides for the first time that a defendant must identify, for the use of the Commonwealth's expert, *all* of his or her physical and mental health treatment providers and that, upon the expert's request, those providers must thereafter supply the expert with their treatment records. I disagree that rule 14 (b) (2) (B) as it presently stands can fairly be read to require such mandatory disclosure. I would accordingly affirm the motion judge's decision as being, on the record before him, squarely within his discretion. That being said, I nonetheless recognize that the Commonwealth raises important questions concerning the proper scope of a rule 14 (b) (2) (B) examination and appropriate related discovery, and that these questions deserve serious consideration.

To avoid the unnecessary risk of untold consequences from a precipitous expansion of mandatory discovery obligations, however, I would refer such questions to the committee, or to an ad hoc committee created for this purpose, and seek its advice concerning whether and to what extent rule 14 (b) (2) (B) should explicitly require the pretrial disclosure of treatment providers and the production of treatment records in conjunction with the rule 14 (b) (2) (B) examination. In performing its work, the committee (or ad hoc committee) should be tasked, among other things, with investigating whether practitioners[1] are experiencing any difficulties with the current version of the rule in this regard and, if so, the type and scope of changes to the rule that would best address those difficulties and shortcomings.

---

[1] I use the word "practitioners" to include both practicing defense attorneys and prosecutors, as well as practicing psychiatrists and psychologists who are called upon to perform rule 14 (b) (2) (B) examinations.

As to my first point of disagreement with the court, I do not agree that the current version of rule 14 (b) (2) (B) requires the types of discovery the Commonwealth seeks. The rule requires that when a defendant has given notice, or a judge has otherwise determined that a defendant intends to offer the testimony of an expert witness on the issue of his mental condition at a relevant time, and that this expert will rely upon the defendant's statements as to his mental condition, the defendant may be ordered to "submit to an examination" by the Commonwealth's expert. The rule expressly provides that "[t]he examination shall include such physical, psychiatric, and psychological tools as the examiner deems necessary to form an opinion as to the mental condition of the defendant at the relevant time." Mass. R. Crim. P. 14 (b) (2) (B) (i). The rule is silent, however, as to any requirement that the defendant provide to the Commonwealth's expert his prior treatment records or other material from external sources. This silence is consistent with the view that, under the current rule, the examination permits the Commonwealth's expert to obtain information directly from the defendant, who presents himself to the examiner and submits to the interview and the examiner's inquiries of him, as well to any tests that the examiner requires.

The "examination" to which the rule refers is otherwise undefined. Dictionary definitions do not aid the court's interpretation of its scope.[2] In concluding that treatment records are nevertheless encompassed in the rule's "examination" requirement, the court instead relies upon a publication by the American Psychiatric Association of what is there characterized as best practice guidelines for the purpose of clinical treatment of adult psychiatric patients. Ante at 643. Clinical treatment, involving as it does a physician-patient relationship geared toward maximizing the patient's best interests, is hardly what characterizes the forensic examination plainly contemplated by the rule. A rule 14 (b) (2) (B) examination has generally been understood to

---

[2]A dictionary definition of an "examination" is "the act or process of examining or state of being examined." Webster's Third New International Dictionary 790 (1993). To "examine," in turn, means "to test by an appropriate method . . . to look over: inspect visually or by use of other senses . . . to inspect or test for evidence of disease or abnormality . . . to inquire into the state of esp[ecially] by introspective processes." Id.

include a "compelled interview" of the defendant, *Commonwealth* v. *Callahan*, 386 Mass. 784, 789 (1982), *S.C.*, 401 Mass. 627 (1988), as well as tests the examiner deems necessary.[3] See *Commonwealth* v. *Poissant*, 443 Mass. 558, 565 (2005) ("interview[] by a Commonwealth expert"). See also *Commonwealth* v. *Connors*, 447 Mass. 313, 317 n.7 (2006), quoting *Commonwealth* v. *Poissant, supra* at 559 n.1 (no meaningful distinction between "interview" and G. L. c. 123A, §§ 13 and 14, "examination").

The rule 14 (b) (2) (B) examination does not implicate a doctor-patient relationship, is evaluative in nature and purpose, and is intended solely to form the basis for the opinion that the expert will render as to the defendant's mental condition at the relevant time. It is a short step from the court's flawed premise as to the nature of the "examination" at issue to its mistaken view that the language of rule 14 (b) (2) (B), allowing for an examination, allows also "for all that is inherent in a psychiatric examination," *ante* at 643, and that this must include, if the examination is to be "comprehensive and meaningful," *id.*, the expert's review of potentially all of a defendant's medical and psychiatric records, throughout his or her life. *Ante* at 648-649. Of equal concern is the fact that, on this logic, because the wholesale disclosure of treatment providers and documents is but "part and parcel" of the rule 14 (b) (2) (B) examination itself, such disclosure "falls within the scope of the limited waiver effectuated when a defendant is required to submit to a rule 14 (b) (2) (B) examination." *Id.* at 645, 646.

The court discerns further support for its position in the 2012 amendments to rule 14 (b) (2) (B), which addressed the written reports that the experts must file with the court as to the mental condition of the defendant at the relevant time. *Ante* at 643. The

---

[3]In *Blaisdell* v. *Commonwealth*, 372 Mass. 753, 759 (1977) (*Blaisdell*), we discussed the "nature of the psychiatric examination," and observed that "[t]he primary diagnostic source in such a situation often is that which the examiner may glean from the nature and content of the defendant's statements." Among other things, "a defendant in such an examination [may] be called on to recite his life history, emotions, feelings, thoughts and views as to relations with others . . . ; [and] he may well have to talk about the crime charged itself as well as acts, events and emotions relative to its commission." *Id.* at 759-760.

amendments[4] make clear that the reports of both parties' experts "must include a written summary of the expert's expected testimony that fully describes: the defendant's history and present symptoms; any physical, psychiatric, and psychological tests relevant to the expert's opinion regarding the issue of mental condition and their results; any oral or written statements made by the defendant relevant to the issue of the mental condition for which the defendant was evaluated; the expert's opinions as to the defendant's mental condition, including the bases and

---

[4]The Reporters' Notes indicate that the 2012 amendments to rule 14 (b) (2) (B) were made in order to incorporate in the rule this court's holding in *Commonwealth* v. *Sliech-Brodeur*, 457 Mass. 300, 321 (2010) (*Sliech-Brodeur*), a holding that does not require today's result. Reporters' Notes to Rule 14 (b) (2) (B), Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1523 (LexisNexis 2012). In that case, we held that rule 14 (b) (2), "from its inception, was intended to serve as the single, self-contained, and comprehensive rule governing pretrial notice and discovery from expert witnesses concerning a lack of criminal responsibility defense." *Sliech-Brodeur, supra.* Discussing *Blaisdell, supra,* we noted that, where a defendant intends to rely at trial on an expert's opinion as to his or her mental state "at or about the time of the commission of the crime, the expected proffer of such expert's testimony acts as a waiver of the defendant's privilege to the extent that the defendant may be ordered to submit to an independent psychiatric examination by a psychiatrist of the Commonwealth's or the court's choosing." *Sliech-Brodeur, supra* at 316, citing *Blaisdell, supra* at 766. We emphasized that "the scope of reciprocal discovery that rule 14 prescribes is carefully limited. When a defendant serves notice that she will call an expert witness to testify about her mental condition at the time of the crime based on her testimonial statements, the rule *only* authorizes a court-ordered psychiatric examination of the defendant by the Commonwealth's expert, and nothing more." *Sliech-Brodeur, supra* at 318 (footnotes omitted). We pointed out also that, in *Blaisdell, supra* at 759, we had "carefully distinguished between a psychiatric inquiry and '[m]atters which may be relevant to a defendant's physiological condition, where objective tests such as X-rays, blood tests and electroencephalographs may be relevant.' " *Sliech-Brodeur, supra* at 319 n.27.

Thus, we concluded that disclosure to the Commonwealth's expert of the defendant's statements to her psychiatric expert, that expert's notes, the results of tests he performed, and other materials upon which the defendant's expert relied, prior to trial, was error. *Id.* at 321. We determined, however, that rule 14 (b) (2) should be amended to require a defendant's expert to produce, at a point to be recommended by the court's standing advisory committee on the rules of criminal procedure, "a report that includes the defense expert's opinion and the bases and reasons for this opinion," and asked the committee to propose such an amendment. *Sliech-Brodeur, supra* at 325. The 2012 amendments were made accordingly, requiring the defense expert's report to be produced after the Commonwealth has delivered its expert's report to the defendant. See Mass. R. Crim. P. 14 (b) (2) (B) (iii).

reasons for these opinions; and the witness's qualifications." Mass. R. Crim. P. 14 (b) (2) (B) (iii).

The court reads into the requirement that the experts' reports contain a summary that "fully describes" these various matters the obligation that the experts themselves gather a *full history* of the defendant. *Ante* at 643-644. The court then sees no way that this extrapolated "requirement" can be met absent the defendant's compilation and disclosure to the experts of all of the defendant's treatment providers, throughout that individual's lifetime, and by the providers' production of expert-designated treatment records. *Ante* at 643-645, 647-649.

The rule as written requires no such thing. It does not require that the expert for either party obtain a full history of the defendant any more than it requires either expert to perform physical, psychiatric, or psychological tests. What it does require from the experts for both parties is that they produce reports fully describing, inter alia, whatever tests were in fact performed and their results, whatever symptoms have been observed, and whatever history of the defendant has been taken. Mass. R. Crim. P. 14 (b) (2) (B) (iii).

Moreover, the Commonwealth has not articulated any reasons why it needs the discovery it seeks in this case. In appropriate circumstances, where necessity is established, Mass. R. Crim. P. 14 (b) (2) (C) (authorizing "[a]dditional discovery" of "other material and relevant evidence relating to the defendant's mental condition") already provides a trial judge "the flexibility to require the parties to provide additional discovery beyond the information contained in the notice that the defendant must give and the reports that the experts must file." See Reporters' Notes to Rule 14 (b) (2) (C), Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1523 (LexisNexis 2012). As the Reporters' Notes make clear, however, "[i]t is a very limited grant of discretion and should be reserved for cases presenting discovery issues that are out of the ordinary." *Id.*

The court maintains that the mandated disclosure of treatment providers and records has always been "part and parcel" of a rule 14 (b) (2) (B) examination, *ante* at 645; I conclude otherwise. Based on the plain language of the rule, this court's prior holdings, see *Commonwealth* v. *Sliech-Brodeur,* 457 Mass. 300,

318-319, 325-326 (2010) (*Sliech-Brodeur*), and *Blaisdell* v. *Commonwealth*, 372 Mass. 753, 759-764 (1977), as well as the absence of any showing of necessity by the Commonwealth, I would hold that the motion judge acted within his discretion in denying the Commonwealth's request for the defendant's medical and psychiatric records prior to the exchange of expert reports set forth in the rule.

That the rule as written does not require the discovery now mandated deepens my concern as to the risk of adverse consequences attendant upon the court's decision and its departure from current practice. A defendant who has suffered a severe head injury such as the defendant in *Commonwealth* v. *Alvarez*, 433 Mass. 93, 100-104 (2000), and who intends to claim that the brain injury affected her ability to control her behavior at the time of the crime, would also have to disclose treatment for alcohol dependency that she had undergone twenty years prior to the head injury, and that forms no part of her intended defense, if the Commonwealth's expert deems such treatment "necessary to conduct a psychiatric evaluation." *Ante* at 648. Similarly, a married defendant who is being treated for Parkinson's disease, and who claims that one of the side effects of one of the medications that he is taking impacted his mental state at the time of the offense, would have to disclose treatment records for a sexually transmitted disease that he contracted, and for which he was treated successfully, years before the crime. A defendant would likewise be required to turn over to the Commonwealth's expert statements he may have made years earlier to a treating psychiatrist concerning other, unrelated crimes. Where a defendant intends to introduce evidence of a pattern of prior abuse (the so-called "battered woman's syndrome" defense) as relevant to her mental condition at the time of the offense, a lifetime of medical treatment for physical conditions would have to be provided to the Commonwealth's expert.

Defendants ordinarily have not been required to produce prior treatment records either before or after delivery of the experts' reports, and certainly not all such treatment records upon designation by the Commonwealth's expert, irrespective of whether defense counsel intends to use them at trial or to provide

them to his or her own expert. In stark contrast to present practice, the court's decision will leave a defense attorney who omits the sources of such treatment records, inadvertently or not, subject to possible claims of ineffective assistance or to bar disciplinary proceedings.[5] See *ante* at note 4. The court brushes aside concern that defense counsel will be forced to disclose records that, for strategic reasons, counsel does not otherwise intend to use at trial or to provide for his or her own expert's use, and that this may implicate, among other things, conflict of interest considerations.[6] Indeed, the court's directives that a defendant must "cooperate" with the Commonwealth's expert "to the same extent" as with the defendant's own expert, *ante* at note 3, and that the defendant's expert must also be able to designate records not provided by defense counsel, *ante* at 648, appear designed to ensure that conflicts of interest will arise.

Moreover, rule 14 (b) (2) (B) (ii) provides that "[n]o statement, confession, or admission, or other evidence of or obtained from the defendant during the course of the examination, except evidence derived solely from physical examinations or tests, may be revealed to the prosecution or anyone acting on its behalf unless so ordered by the judge." Apart from underscoring that rule 14 (b) (2) (B) does not anticipate that the Commonwealth's psychiatric expert will have the subject treatment

---

[5]The court seems to have imposed an obligation upon defense counsel to compile information identifying all of the defendant's treatment providers. How this is to be accomplished is unclear when it is questionable whether even an eighteen year old defendant or his family members would have readily at their disposal specifics as to "names, addresses, dates of treatment, and areas of specialized practice of all treatment providers." *Ante* at 649. See *ante* at note 3, 648-649. For an older defendant, particularly one with a history of mental illness, and who is dependent upon the record-retention policies of individual health care providers, such information may be impossible to obtain.

[6]Relying on *Commonwealth* v. *Alvarez*, 433 Mass. 93, 101-104 (2000), for the proposition that defense counsel renders ineffective assistance when failing to provide *relevant* medical records to the defense expert, the court mandates that, going forward, a defendant must produce *all* treatment records, of whatever relevance, that the Commonwealth's expert designates. *Ante* at 644-645 & note 4. Of course, in *Commonwealth* v. *Alvarez, supra* at 100-102 & n.9, counsel was not ineffective for having made a strategic choice not to give certain clearly relevant medical records to his expert. Counsel was ineffective because he failed in the first instance to investigate, obtain, or review those records; he later failed to prepare his own witness adequately by not providing the witness with those records.

records during the court-ordered examination of the defendant, it is far from clear whether statements contained in those records concerning other crimes, revealed to psychiatrists or psychologists potentially years prior to the offense, would be deemed to have been made "during the course of the examination." If that were so, nothing in the court's holding would appear to preclude the examiner from disclosing these statements to the Commonwealth, a prospect that is fraught with difficulty. See *Sliech-Brodeur, supra* at 318 n.23 ("We have recognized the court-appointed examiner as an agent of the prosecution").

While awaiting the committee's implementation of today's discovery mandate, the court devises an interim procedure whereby "a defendant is to provide the rule 14 (b) (2) (B) examiner with the same records provided to or considered by the defense expert,"[7] and the examiner may also request from the defendant "the names, addresses, dates of treatment, and areas of specialized practice of all treatment providers," so that the Commonwealth's expert can augment the records to be received. *Ante* at 648-649. As with all mandated discovery of treatment providers and records in conjunction with the rule 14 (b) (2) (B) examination, pursuant to the interim procedure, this mandated discovery is to be produced without any showing of relevance by the Commonwealth,[8] without any judicial deter-

[7]Apparently the defendant will bear the expense of producing these potentially voluminous records.

[8]While the court states that it "expect[s]" that neither the Commonwealth's nor the defendant's expert "will need to review records that are irrelevant to the issue of the defendant's condition at the time of the commission of the alleged offense," *ante* at note 9, it does not suggest that relevancy is a condition of the obligation to produce treatment records. I am unaware of any other instance in our discovery jurisprudence where matters of relevancy are presumptively immaterial. Contrast *Commonwealth* v. *Lampron*, 441 Mass. 265, 269 (2004), quoting *United States* v. *Nixon*, 416 U.S. 683, 699-700 (1974); Fed. R. Crim. P. 17(c); Mass. R. Crim. P. 17, 378 Mass. 885 (1979).

In any event, given the limited information that the Commonwealth's examiner may have available by which to determine relevancy, it is uncertain how such determinations will be made. Moreover, since any undisclosed record the Commonwealth's examiner deems "necessary" is to be subpoenaed by the clerk and delivered to the Commonwealth's expert, without the involvement of a judge, it is less than clear how a defendant will "have the opportunity to move to exclude" any "objectionable" material. *Ante* at 649.

mination of possible privilege issues[9] and, indeed, without any review whatsoever by the trial judge.

In addition to its failure to articulate why it needs the discovery it seeks in this case, the Commonwealth has not established why the sweeping expansion of the scope of permissible discovery under rule 14 (b) (2) (B) it advocates is warranted and appropriate. Given the absence of exigency, the limits of the information before us, and the importance of the interests involved, the court today plunges unnecessarily into uncharted waters. To be sure, we are the ultimate interpreters of rule 14 (b) (2) (B). In performing that task, however, we should tread carefully before embarking on a significant change in practice, first seeking the advice and counsel of those familiar with the rule and with any perceived shortcomings in its application. If, in the interests of more open discovery and fair-

---

[9]Relying in part on *Commonwealth* v. *Callahan*, 386 Mass. 784, 789 (1982), *S.C.*, 401 Mass. 627 (1988), the court states that both constitutional and statutory privilege have been waived when a defendant gives notice of intent to offer expert testimony regarding his mental condition, *ante* at 645-648, because the defendant could then be ordered to submit to a rule 14 (b) (2) (B) examination, "including all that a comprehensive examination entails." *Ante* at 646. In that case, however, we explained that:

> "The Commonwealth relies on our decision in *Blaisdell* to claim that by offering expert testimony the defendant waived his privilege against self-incrimination, as well as the protections of [G. L. c. 233,] § 23B. The Commonwealth misreads our decision in *Blaisdell*. In *Blaisdell*, we ruled that when a defendant notifies the Commonwealth that he intends to raise the issue of his criminal responsibility and to present the evidence of experts who have examined him, then he may be required to submit to a court ordered psychiatric examination. This is so because the defendant, by voluntarily proffering such evidence to the jury, has waived his privilege against self-incrimination to a limited extent. However, we did not hold that the defendant thereby waived his privilege against self-incrimination entirely. Indeed, we imposed stringent guidelines on the use of the fruits of the compelled interview. . . . In *Commonwealth* v. *Goulet*, 374 Mass. 404, 411 n.4 (1978), we again made it clear that the waiver we found in *Blaisdell* was a limited waiver that could require a defendant to submit to a court ordered examination. We stated that '[t]his waiver is implied in the interest of giving the Commonwealth a fair chance to present countervailing psychiatric testimony; it is not to be understood as a complete relinquishment of the Fifth Amendment and art. 12 privilege which could allow pressure on the defendant to take the witness stand.' *Id*."

*Commonwealth* v. *Callahan*, *supra* at 788-789.

ness to the Commonwealth, see *Sliech-Brodeur, supra* at 324-325, earlier and more expansive discovery of a defendant's treatment providers and records is shown to be warranted, appropriate changes would be in order. This should occur only after a period of due consideration by the committee and by the court's rules committee, after a period of public comment by practitioners in the field, and after further reflection by the court.

Because I believe that changes of such moment should not be made without public consideration and comment, and after duly weighing the possible consequences, I respectfully dissent.